THE STATE, EX REL. STOKES, MAYOR, *v.* PROBATE COURT OF CUYAHOGA COUNTY ET AL.

(No. 29505—Decided March 7, 1969.)

*Messrs. Squire, Sanders & Dempsey, Mr. Clarence L. James,* director of law, and *Mr. Daniel J. O'Loughlin,* for relator.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Dennis J. McGuire,* for respondents.

*Per Curiam.* This case is before us as an action originating in this court for a writ of prohibition.

In accordance with the provisions of Sections 733.72 to 733.77, inclusive, Revised Code, a complaint, bearing the signatures of five electors of the city of Cleveland, was filed in the Probate Court of Cuyahoga County. The complaint makes certain allegations against the Honorable Carl B. Stokes, Mayor of the city of Cleveland, and seeks to have the Probate Court remove Mr. Stokes from his office, and alleges that he has been guilty of misfeasance and malfeasance in office.

Defendant Stokes filed a motion to quash summons, contending that the Probate Court lacked jurisdiction in

the matter, under the theory that the statutes under which this removal procedure was initiated have been repealed by implication by virtue of the enactment of statutes now known as Sections 3.07 to 3.10, inclusive, Revised Code. The motion was overruled. Defendant, as relator, then filed in this court his petition seeking a writ of prohibition to prevent the Probate Court from exercising jurisdiction, again on the theory of repeal by implication of Section 733.72 *et seq.,* Revised Code. Respondents, the Probate Court of Cuyahoga County and Judge Holland M. Gary (who sits by assignment), have filed a demurrer to that petition.

We, therefore, are not involved with the question whether the charges in the complaint filed with the Probate Court have any factual merit, or whether there is any justification for the removal prayed for. The sole question confronting us is whether Section 733.72 *et seq.,* Revised Code, are still operative, or whether they have been repealed by implication. The answer to that question will do no more than to determine whether the Probate Court has the jurisdiction to hear evidence supporting and opposing the complaint filed therein, and to act on the basis of its findings. Counsel for both parties have agreed that this court's ruling on respondents' demurrer to the petition "will be dispositive of the jurisdictional question raised by the petition."

Sections 733.72 to 733.77, inclusive, Revised Code, establish a procedure for the removal of an officer of a municipal corporation. The procedure may be initiated by the filing, with the Probate Judge of the county in which the municipality is situated, of a complaint made under oath by any elector of the municipal corporation involved. Such complaint must also be signed and approved by four other electors of the municipal corporation. The complaint must set forth allegations falling within at least one of three separate classes delineated in Section 733.72, including "misfeasance or malfeasance in office," as alleged in the case filed in Probate Court against relator. After requiring the complaining party to furnish security for costs, the Probate Judge is required to issue a citation against the

accused party. The provisions of these sections then set forth the procedure to be followed, and authorize the Probate Judge to remove the officer if the charges "are sustained by the verdict of the jury, or by the decision of the probate judge when there is no jury." (Section 733.76, Revised Code.)

Sections 3.07 to 3.10, inclusive, Revised Code, provide a general, all-inclusive method for removal of any public official in the state of Ohio, whether he be a state, county or municipal official. The procedure must be initiated by the filing of a complaint, signed by a number of qualified electors of the political entity involved, in the Court of Common Pleas in the county wherein the official complained of resides (except that, where the official is a Common Pleas Judge, the complaint is to be filed in the Court of Appeals). The last sentence of Section 3.07, Revised Code, reads as follows:

"The proceedings provided for in * * * [Sections 3.07 to 3.10, inclusive] are in addition to impeachment and other methods of removal authorized by law, and such sections do not divest the governor or any other authority of the jurisdiction given in removal proceedings."

Further distinctions between the two procedures herein involved, and the histories of their enactments and amendments, are set forth and discussed below.

We must start with the presumption that, where two similar statutes exist, their coexistence was intended by the General Assembly. Once such intent is questioned, as here, the courts may inquire into the language and effect of the statutes, to see whether a conflict or logical inconsistency is apparent. Even then, however, the courts must see whether such conflict or inconsistency may be reconciled by some reasonable interpretation. Only if such reconciliation is thereby impossible, may repeal by implication be found. *State, ex rel. Fleisher Engineering & Const. Co.,* v. *State Office Bldg. Comm.* (1930), 123 Ohio St. 70, 74; *Henrich* v. *Hoffman, Judge* (1947), 148 Ohio St. 23, 26; *O'Neil* v. *Board of County Commissioners* (1965), 3 Ohio St. 2d 53, 57, and cases cited therein.

It is a general rule that repeals by implication are not

favored. Where a prior enactment of a special statute is followed by a later enactment in general terms, which does not expressly contradict the provisions of the prior act, the general act will not be said to repeal the prior one, "unless such intention is clear." Even where two such acts have conflicting terms, "neither necessarily abrogates the other, * * * and it is immaterial which is of the later date." *Commissioners* v. *Board of Public Works* (1884), 39 Ohio St. 628, 632.

Relator cites paragraph one of the syllabus of *Western & Southern Indemnity Co.* v. *Chicago Title & Trust Co.* (1934), 128 Ohio St. 422, which reads as follows:

"Where two sections of the General Code contain inconsistent provisions relating to the same subject-matter, the later enactment must prevail and the earlier is repealed by implication."

We acknowledge the validity of that statement, but also note that paragraph three of the syllabus of the same case provides:

"A special statute covering a particular subject-matter must be read as an exception to a statute covering the same and other subjects in general terms."

Relator contends that Section 733.72 *et seq.*, Revised Code, having their origin at a point in time *prior* to the adoption of the Constitution of 1851, are repealed by implication by Section 38 of Article II thereof, under the authority of which Sections 3.07 to 3.10, Revised Code, emanated, first as Sections 10-1 to 10-4, General Code. Such an argument was rejected 116 years ago, in the case of *State, ex rel. Evans,* v. *Dudley* (1853), 1 Ohio St. 437, 441, wherein Judge Ranney stated that the rule, opposing repeal by implication except where there is an irreconcilable repugnancy, is equally applicable as between a constitutional provision and a legislative enactment. See, also, *Mahoning Valley Ry. Co.* v. *Santoro* (1915), 93 Ohio St. 53, paragraphs one and two of the syllabus.

The basic test, then, as to whether a new Constitution containing no express repeal of earlier legislation repeals by implication a pre-existing statute, depends upon one

rather simple question: Is the statute one which is sufficiently consistent with the new Constitution to have been capable of passage *after* the new Constitution took effect? If the answer is in the affirmative, the statute cannot be said to have been repealed by implication; if in the negative, such repeal is implicit in the adoption of the new Constitution. *Cass* v. *Dillon* (1853), 2 Ohio St. 607, paragraphs three through five of the syllabus; *State, ex rel. Toledo,* v. *Lynch* (1913), 88 Ohio St. 71, 92; *State* v. *Cameron* (1914), 89 Ohio St. 214, paragraph two of the syllabus.

It is obvious that Section 38 of Article II of the Constitution, which section was adopted in 1912, clearly authorizes such laws as Section 733.72 *et seq.,* Revised Code. Section 38 reads, in its entirety, as follows:

"Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the General Assembly for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the Constitution."

Of special significance is the first word, "Laws," which, being in the plural, clearly authorizes more than one procedure for the removal of public officers. Before proceeding to apply existing law to the situation, it would be helpful first to review the history of the enactment of the two statutes and one constitutional provision herein involved.

Sections 733.72 to 733.77, Revised Code, in their present form, were enacted in 1953. However, they are the direct descendants of an original bill passed in May 1871 (68 Ohio Laws 113-114) under the title, "To provide for the trial and removal of municipal officers from office." They survived intact as Sections 4670 to 4675, General Code. The wording of the statutes in their present form is, in most respects, identical to that of the original bill— so much so, in fact, that Section 733.73, as enacted in 1953, erroneously contained the word, "complaint," where "complainant" was intended, even though the same error

in the original bill of 1871 had been corrected when incorporated into the Revised Statutes as Section 1733 thereof. Similarly, the same error was corrected in Section 733.73, Revised Code, in 1961 (129 Ohio Laws 582 [641-642] ). There is no doubt of the long and uninterrupted history of this provision.

Section 38 of Article II of the Ohio Constitution was not a part of the new Constitution when it was enacted in 1851. It was, rather, adopted 61 years later, in 1912.

The provisions of Sections 3.07 to 3.10, inclusive, Revised Code, were enacted in 1913 (103 Ohio Laws 851, 853), as Sections 10-1 to 10-4, General Code. The bill provided for several grounds not a basis for removal under the older sections for removal of municipal officers, to wit: gross neglect of duty, gross immorality, drunkenness, nonfeasance, being deemed guilty of misconduct in office, refusal or wilful neglect to enforce the law or to perform any official duty imposed on him by law. It was amended in 1925 (111 Ohio Laws 264) to include the ground of flagrant and wilful or unlawful exercise of authority. Conversely, the bill did not include the specific grounds set forth in the earlier statute, now Section 733.72, Revised Code, subsections (A) and (B), the former subsection relating to members of the legislative authority of a municipal corporation, and the latter relating to a conflict of interest of any municipal officer relative to city business.

Notwithstanding these distinctions, the provisions of the more recent general enactment are so broad in scope that they may fairly be said to encompass all the grounds of the older enactment relating solely to municipal officials.

Of equal note is the first sentence of the later act (now the first sentence of Section 3.07, Revised Code), which reads, "*Any person holding office* in this state, or *in any municipal corporation* * * * *thereof, coming within the official classification in Section 38 of Article II, Ohio Constitution,* * * *.*" (Emphasis added.) Relator bases much of his argument on the all-inclusive nature of the enactment, the fact that it refers, *inter alia,* to municipal officers, and the reference to Section 38, Article II of the Constitution.

We must also point out that the title of the act (103 Ohio Laws 851) is "To provide for the removal of certain officers for misconduct in office." The title itself gives additional support to relator's contention that the General Assembly seems to have been unaware of the existence of prior statutes relating to removal of municipal officials. In the absence of anything further in the wording of the more recent enactment, it might be possible to interpret all these factors as being sufficient to establish repeal by implication of Section 733.72 *et seq.*, Revised Code (then Section 4670 *et seq.*, General Code).

However, the original bill contained (as Section 3.07, Revised Code, now does) the sentence, "The proceedings provided for herein ["in such sections" in Section 3.07] are in addition to impeachment and other methods of removal now ["now" deleted in Section 3.07] authorized by law." Thus, a clear and unambiguous expression of legislative intent exists.

Respondents cite the case of *In re Removal of Member of Council Joseph Coppola* (1951), 155 Ohio St. 329, which dealt with various questions in a lawsuit brought in a Probate Court under Section 733.72 *et seq.*, Revised Code, as support for their contention that such sections are in full force, notwithstanding the existence of Section 3.07 *et seq.*

Relator counters with the argument that the question of the repeal by implication of Section 733.72 *et seq.* was never raised in the *Coppola case,* and that that case is, therefore, of no avail to respondents. Relator quotes the first paragraph of the syllabus of *State, ex rel. Gordon,* v. *Rhodes* (1952), 158 Ohio St. 129, which reads:

"A reported decision, although in a case where the question might have been raised, is entitled to no consideration whatever as settling, by judicial determination, a question not passed upon or raised at the time of the adjudication."

We cannot dispute that such rule is well-established. However, the court in *Coppola* clearly stated,

"Section 4670, General Code [now Section 733.72, Re-

vised Code], *authorizes* complaints such as those in the present case, * * *." (155 Ohio St. at 332. Emphasis added.)

While it is true that the *Coppola case* raised only the question whether certain acts by councilmen in previous terms fell within the purview of the section, we cannot assume that the Ohio Supreme Court, in 1951, would hear a case, publish an opinion, and remand for further proceedings, where all proceedings arose from a statute which had been repealed by implication decades earlier. Moreover, the court held that such section "authorizes complaints such as those in the present case." A similar statement is found in the syllabus of the case. Clearly, a defunct statute cannot be said to authorize anything, and the statement of the Ohio Supreme Court in this regard leaves no doubt that it considers the statute very much operative.

See, also, *State, ex rel. Gettles*, v. *Gillen* (1925), 112 Ohio St. 534, 536, stating that "These sections [4670 to 4675, inclusive, General Code, now Sections 733.72 to 733.77, Revised Code] *give jurisdiction* to the Probate Court to hear and determine such charges, * * *." (Emphasis added.) Sections 10-1 to 10-4, inclusive, General Code (now Sections 3.07 to 3.10, Revised Code), which relator contends are now respondents' sole remedy, had been enacted 12 years earlier.

It is also settled that, where two statutes are enacted at different times, and both are subsequently and simultaneously re-enacted as part of a recodification, there is no longer the element of a subsequent enactment, which is a *sine qua non* of repeal by implication. *State* v. *Hollenbacher* (1920), 101 Ohio St. 478, 485-486. Such obviously was the case with the statutes herein involved, when the General Code of Ohio was recodified into the Revised Code.

Where there is an ambiguity or a conflict between two or more statutes purporting or seeming to be mutually exclusive, then the courts can, in the exercise of their authority, declare the earlier statute or statutes repealed by implication. Judicial authority, insofar as it relates to legislative enactments, may be used to fill a void or to remove a

contradiction. However, judicial fiat may never supplant the clear expression of legislative intent. *Acme Engineering Co.* v. *Jones* (1948), 150 Ohio St. 423, 433.

This distinction was very recently reaffirmed in the case of *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16. The second and third paragraphs of the syllabus read as follows:

"2. *The primary purpose of the judiciary in the interpretation or construction of statutes is to give effect to the intention of the General Assembly,* as gathered from the provisions enacted, by the application of well-settled rules of interpretation, *the ultimate function being to ascertain the legislative will.*

"3. The rule is that where two conflicting enactments are passed at the same session of the General Assembly, the latest enactment in point of time will prevail. It, however, as well as *all* other *rules of construction dealing with repeals by implication, are mere canons of construction. Such canons are only aids to the ascertainment of the legislative intent and must yield to such intent if the same be otherwise. They should never be followed to the extent of defeating or overriding the definite intent of the General Assembly.*" (Emphasis added.)

The *Henry* case dealt with the question which of two conflicting versions of Section 2105.21, Revised Code, survived a head-on clash in 1953, each being enacted within one month of the other. We note that the case now before us involves two separate and distinct statutes, one general and one special, having become laws at separate points in time, 42 years apart. Whereas it was obvious that the *Henry* case involved a situation wherein the Legislature manifestly did not intend to have two versions of the very same statute, no such situation exists here. Yet, the general rules of construction reaffirmed in the language of the *Henry* syllabus, quoted above, are directly applicable.

In the case of *Leach* v. *Collins* (1931), 123 Ohio St. 530, 533-534, the Supreme Court of Ohio dealt with a question identical to the one now confronting us. A statute, prescribing the procedure for conducting an election regard-

ing detachment of territory from a village, had been adhered to and such election was held. The election was contested on the ground that there had been a later enactment, part of a recodification of election laws, which dealt in general terms with election procedures and the proper form for ballots for voting on questions and issues. The forms prescribed in the respective statutes differed. The contestors maintained that the newer general statute should have been complied with, rather than the older special statute relating solely to this one type of election. The contestors pointed out that the newer statute went so far as to provide, "This general form of submitting questions and issues on the ballot shall take the place of and shall supersede all other forms for questions and issues now provided by law." Nevertheless, the court upheld the validity of the election under the older special section. The court stated:

"* * * [The older statute] is a special statute enacted for a particular purpose and provides for a specific and definite proceeding and prescribes in detail the method and form of procedure. *It is well settled that such specific statutory provisions are to be regarded as exceptions to general statutory provisions, and that the rule that repeals by implication are not favored has additional force under such circumstances. State, ex rel. Elliott Co., v. Connar, Supt. of Dept. Pub. Works, ante,* 310, 175 N. E. 200. The rule applicable here is stated by the Supreme Court of the United States in *Rodgers* v. *United States,* 185 U. S., 83, 22 S. Ct., 582, 583, 46 L. Ed., 816, as follows: 'Where there are two statutes, the earlier special and the later general (the terms of the general being broad enough to include the matter provided for in the special), *the fact that one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special.'*" (Emphasis added.)

It is noted that precedence was given in the *Leach*

*case* to a prior special statute even though the subsequent general codification attempted to supplant all earlier ballot forms. The court based its decision, in part, upon the rule that implied repeal is not favored and, in part, upon the fact that the earlier statute provided for "the entire procedure" for conducting a special election to determine the question of territorial detachment.

We cannot ignore that the case now before us not only is also involved with an older special statute (actually several statutes combined) which sets forth the entire procedure for proceedings in the Probate Court for the removal of a municipal officer, but also contains two additional elements which were lacking in the *Leach case*: (1) the subsequent general statutes (Section 3.07 *et seq.*, Revised Code) contain no language purporting to invalidate the earlier statutes (Section 733.72 *et seq.*, Revised Code) relied on by respondents; and (2) such subsequent statutes, in fact, contain language expressly preserving all earlier laws for removal.

Where two statutes appear contradictory, but are both susceptible of reasonable construction and interpretation which will not nullify either statute, the courts have a duty to so construe and interpret them. Paragraph one of the syllabus of *Humphrys* v. *Winous Co.* (1956), 165 Ohio St. 45.

It may appear unusual, or strange, that the General Assembly should see fit to provide for two such alternatives as those herein involved, one (Section 733.72 *et seq.*) permitting removal proceedings to be initiated by a complaint signed by only five electors, and the other (Section 3.07 *et seq.*) requiring signatures equal in number to 15 per cent of the total votes cast in the political subdivision in the last preceding gubernatorial election. However, a highly significant difference exists between those provisions. The procedure authorized by Section 733.72 *et seq.*, and involved in the case now before this court, involves *municipal officers only*, whereas the other procedure (Section 3.07) is applicable against "Any person holding office in this state, or in any municipal corporation, county, or

subdivision thereof, coming within the official classification in Section 38 of Article II, Ohio Constitution.'' Thus, we are confronted with the question whether the General Assembly was, and is, of the opinion that there should exist an alternate procedure for removal of municipal officials, which is different from that for removal of, for example, the Governor or a county commissioner. Relator contends that the enactment of Section 3.07 *et seq.,* Revised Code, ''revised the whole subject-matter of former enactments on the same subject and by basic changes in procedure *impliedly repealed all former statutes* on the same subject although the statute contains no words to that effect.'' (Emphasis added.) Relator's contention is clearly and irrefutable overcome, however, by the final sentence of Section 3.07, which we have already quoted.

We acknowledge the general rule that a conflict between two existing statutes may give rise to a presumption that the more recently enacted statute repeals the older one. *Lorain Plank Road Co.* v. *Cotton* (1861), 12 Ohio St. 263. However, if there is any presumption raised by the two sets of statutes herein involved, that presumption is that the General Assembly, in enacting Sections 3.07 to 3.10, inclusive, took cognizance of all other existing sections of the Code providing for removal of public officers and intended that all such sections should remain in full force and effect. *State, ex rel. Draper,* v. *Wilder* (1945), 145 Ohio St. 447, 451; *State* v. *Ferguson* (1954), 96 Ohio App. 297 (paragraph one of the syllabus), appeal dismissed, 161 Ohio St. 563. If Section 3.07 contained language which stated, or even intimated, that such section would be the sole means of ousting a public official, or if it merely listed certain other means of removal, such as impeachment or recall, as being still valid, then the courts would be empowered to construe Section 3.07 *et seq.* as having been intended to repeal all pre-existing removal statutes other than those delineated. However, Section 3.07 explicitly preserves intact ''other methods of removal authorized by law.''

We note that relator suggests that the word ''meth-

ods," as used in the saving clause of Section 3.07, Revised Code, is limited, by the nearly identical doctrines of *ejusdem generis* and *noscitur a sociis,* because of its context within the phrase, "impeachment and other methods of removal." Relator does not suggest the extent of such limitations, and we are at a loss to surmise what they might be. If impeachment alone were the only other removal procedure to be retained following the adoption of Section 3.07 *et seq.,* then the phrase, "and other methods of removal authorized by law," would be totally extraneous. Such obviously was not the intent of the General Assembly. Indeed, it is worthy of note that one of the sections applicable to the removal procedure being utilized by respondents is Section 733.76, which is entitled, *"Removal of officer if found guilty."* There can be no doubt, therefore, that such procedure is clearly within the purview of the phrase, "other methods of removal authorized by law," as used in Section 3.07, Revised Code.

In this connection, relator also contends that "the word 'authority' is limited in its application by reference back to the term 'Governor.' " Thus, it is maintained, the final sentence of Section 3.07 preserves only certain forms of removal, namely those authorizing such removal by the Governor or by any other authority embraced by some generically-limited class of authorities. Yet, as with the question whether there is a limitation on "other methods," relator offers no clue as to what such limitation might be.

It ought to be here noted that Section 733.72 *et seq.,* Revised Code, are not the only statutes presenting alternatives to the general provisions of Sections 3.07 to 3.10, inclusive. For example, Sections 319.24 to 319.26, inclusive, Revised Code, provide for a very detailed procedure for the removal of a county auditor. The procedure authorized by these sections involves action by the Probate Court, Board of County Commissioners, prosecuting attorney, grand jury and Court of Common Pleas. Nonetheless, this entire procedure may be initiated by the filing of an affidavit *by anyone with the Probate Court.* Two other noteworthy examples of specific removal procedures are those provid-

ed for in Section 315.06, pertaining to removal of a county engineer, and Section 309.05, pertaining to removal of a prosecuting attorney, both procedures involving the bringing of a civil action in the Common Pleas Court *by one person,* in the first instance by "any person," in the second by "one or more taxpayers." The length of time which such statutes have existed, and their retention in the statutes of Ohio throughout repeated revisions thereof, surely negate any presumption that their existence is the result of a mere legislative oversight as to the passage of the general procedure outlined in Section 3.07 *et seq.,* Revised Code.

It is clear that Section 2913, General Code (now Section 309.05, Revised Code) remained operative, following the passage of Sections 10-1 to 10-4, General Code (now Section 3.07 *et seq.,* Revised Code). *State, ex rel. Clinger,* v. *White* (1944), 143 Ohio St. 175, 177-178; *State, ex rel. Thomas,* v. *Henderson* (1931), 123 Ohio St. 474, 477; *Chenault* v. *McLean* (1933), 48 Ohio App. 284.

Thus, relator's contention as to a limitation on "other authority" is without merit. It is also noteworthy that four other "authorities" (Probate Court, Board of County Commissioners, prosecuting attorney and grand jury, all under Section 319.24 *et seq.,* Revised Code) are also authorized to act in removal proceedings. It seems proper to conclude, therefore, that the phrase, "any other authority," as used in the saving clause of Section 3.07, Revised Code, is meant to be taken literally, and contemplates any governmental authority given jurisdiction in any other removal procedures, regardless of whether such authority is of the executive, legisative or judicial branch of the governmental entity involved.

Relator contends that the right of appeal is denied to a complainant under the Probate Court procedure (Section 733.72 *et seq.*), whereas, under the other procedure, both parties have a right of appeal (Section 3.09, Revised Code). We cannot agree. The only mention of appeal in the Probate Court procedure appears in Section 733.77, which is entitled "Payment of costs." Such section provides, in part, that "If an appeal on questions of law is instituted

by the officer complained of, to reverse or vacate the order of the Probate Court, such officer shall not exercise the functions of his office until order [*sic*] is finally reversed or vacated." The obvious purpose of this provision is to prevent a stay of execution of the order of the Probate Court removing the officer from his office, since the Judge of the Probate Court is required to issue the order of removal if the charges are sustained (Section 733.76). However, the mere mention of the possibility that the officer might appeal cannot be said to forbid an appeal by the complaining party.

Relator further argues that the Probate Court procedure (Section 733.72 *et seq.*) will not permit suspension of the officer *pendente lite,* while the other procedure does permit such suspension. In our opinion, this is a logical distinction. To permit the signatures of five electors to result in the immediate suspension of the officer complained of would be to permit the continual harassment and divestiture of any public officer by a handful of political opponents or malcontents. Thus, the Probate Court procedure wisely withholds the right of removal from office until the jury, or the court sitting without a jury, should determine the charges proved. In the Common Pleas Court procedure (Section 3.07 *et seq.*), however, the trial itself is preceded by a process whereby 15 per cent of the electorate has agreed that the officer is guilty of wrongdoing; thus a removal from office *pendente lite* would be far less objectionable and incapable of usage as a tool for harassment.

The Ohio Supreme Court repeatedly has held that a special statutory provision is an exception to an alternate provision which is provided in another more general statute, and that such special provision retains its viability notwithstanding the general provisions. *Eggers* v. *Moore* (1955), 162 Ohio St 521, 527; *Johnson* v. *United Enterprises, Inc.* (1957), 166 Ohio St. 149, 153-154, and cases cited. The principle is so well settled that it is now termed "axiomatic." *Fisher Bros. Co.* v. *Bowers* (1957), 166 Ohio St. 191, 196.

For the reasons herein stated, the demurrer by re-

spondents to relator's petition for writ of prohibition is sustained. The parties have agreed that this court's ruling on respondents' demurrer will be dispositive of the jurisdictional question raised, and the relator not being able to plead further, judgment is entered for respondents. The petition for writ of prohibition is dismissed at relator's costs.

*Demurrer sustained and writ denied.*

SILBERT, C. J., ARTL and CORRIGAN, JJ., concur.