**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Schwartz v. Cuyahoga Cty. Bd. of Revision,* **Slip Opinion No. 2015-Ohio-3431.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3431

SCHWARTZ, TRUSTEE, APPELLANT, *v.* CUYAHOGA COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Schwartz v. Cuyahoga Cty. Bd. of Revision,* Slip Opinion No. 2015-Ohio-3431.]**

*Taxation—Real-property valuation—Taxpayer-appellant's burden of proof to establish entitlement to decrease in valuation—Sale price as best evidence of property's value—Board of Tax Appeals' decision reversed and cause remanded.*

(No. 2013-1955—Submitted January 13, 2015—Decided August 27, 2015.)

APPEAL from the Board of Tax Appeals, No. 2013-608.

_____

**Per Curiam**.

{¶ 1} This case involves a dispute over the value of a two-family dwelling in Cuyahoga County. Appellant, Fred P. Schwartz, purchased the property from the Secretary of the United States Department of Housing and Urban

Development ("HUD") for $5,000 in October 2011. The county fiscal officer valued the property at $126,800 for tax year 2011, and Schwartz sought a reduction to $30,000. The Cuyahoga County Board of Revision ("BOR") retained the fiscal officer's valuation and the Board of Tax Appeals ("BTA") affirmed.

{¶ 2} Schwartz appealed and now argues that the BTA acted unreasonably and unlawfully by rejecting the 2011 sale price as the best evidence of the property's value, by assigning little weight to his comparable-sales data, and by failing to require the county fiscal officer and the BOR (collectively, the "county appellees") to introduce evidence supporting their $126,800 valuation. He also asserts a due-process claim.

{¶ 3} For the reasons explained below, the BTA erred by rejecting the 2011 sale price as the best evidence of the property's value. We therefore reverse the BTA's decision.

## FACTS

### *The property*

{¶ 4} The property at issue is located at 3259 Desota Avenue in Cleveland Heights, Ohio, and has been improved by a two-family dwelling.

{¶ 5} Huntington National Bank acquired the property at a sheriff's sale in August 2010, and HUD assumed the property from Huntington in September 2010. Schwartz purchased the property from HUD for $5,000 on October 17, 2011, and holds it in trust for Vladimir Victor.

### *Valuation and BOR proceedings*

{¶ 6} In tax year 2011, the Cuyahoga County fiscal officer valued the property at $126,800, and Schwartz filed a complaint seeking a decrease to $30,000. No countercomplaint was filed.

{¶ 7} The BOR held a hearing on January 25, 2013. Schwartz did not appear, but he was represented by counsel and presented testimony from Victor about the property and the 2011 sale.

{¶ 8} Victor testified that he had learned that the property was for sale while caring for an adjacent home on Desota Avenue. The property was listed with Sarver Realty, and a sale sign was posted in the yard for three years. Victor made several attempts to purchase the property, but his offers were not accepted. Later, Sarver Realty contacted Victor after a sale to another buyer fell through. Sarver Realty told Victor that if he did not buy it, the property would be demolished.

{¶ 9} At the time of the hearing, Victor was renting out the property's lower suite for a three-month term, at a rate of $650 per month. He did not have any other renters lined up. Victor testified that the city had sent notice of "a lot of" housing-code violations, but had not sent formal notice of an intent to raze the property.

{¶ 10} Schwartz's counsel submitted eight exhibits documenting other sales on Desota Avenue between September 2008 and January 2013, many of which had been sheriff's sales or foreclosure sales. At the hearing, he challenged the BOR to find a comparable with a higher sale price on that street.

{¶ 11} On February 14, 2013, the BOR issued a decision retaining the fiscal officer's valuation. The BOR's "Oral Hearing Worksheet and Journal Entry" noted:

> No evidence received to substantiate claim that property is not inhabitable. BOR notes sale 10/17/11 from HUD. Not arms length. Sales submitted are bank & repo sales in comp sales report with no analysis as to how properties are comparable. Information is but raw sales data which BOR is

left to speculate. Use of neighboring assessed value to sale price is not valid indicator of value.

### *BTA proceedings*

{¶ 12} Schwartz appealed to the BTA under R.C. 5717.01, again requesting a reduction to $30,000. He submitted a brief in support, but the fiscal officer and BOR did not file briefs.

{¶ 13} In his brief, Schwartz contended that the 2011 sale of the property for $5,000 was a voluntary, arm's-length transaction in that the property was publicly advertised as part of HUD's "inventory of foreclosed properties," Schwartz was the high bidder, and he did not have a special relationship with HUD.

{¶ 14} Next, Schwartz argued that a market-data analysis supported a valuation of $30,000. *See* Ohio Adm.Code 5703-25-05(G); 5703-25-11(C)(1). He relied on the eight comparables that he had submitted to the BOR, as well as new evidence of "Other Sales on Desota Avenue Closest in Time to 01/01/2011." For each allegedly comparable property, Schwartz provided the fiscal officer's 2011 valuation. Ultimately, he asked, "is it realistic and fair to state that HUD could have sold the property for $126,800 in such a depressed market?"

{¶ 15} The BTA held a hearing on October 28, 2013. At the hearing, Schwartz's counsel explained that even though the property "was purchased for $5,000 on October 17th, 2011," Schwartz was "agreeable to a valuation of 30. * * * So I think he's being fair."

{¶ 16} The BTA affirmed. In its decision, the BTA explained that Schwartz had the burden to prove a value of $30,000. The BTA rejected the 2011 sale price as the best evidence of value, reasoning that a HUD sale does not indicate market value. The BTA then observed that Schwartz's information about other properties was "nothing more than a list of raw sales data." BTA No. 2013-

4

608, 2013 WL 6834186, *2 (Nov. 13, 2013). Therefore, the BTA stated, it was "left to speculate as to how common differences, e.g., location, size, quality of construction of improvements, nature of amenities, date of sale as opposed to tax lien date, etc., may affect a valuation determination." *Id.* Ultimately, the BTA found "an insufficient basis upon which to alter the fiscal officer's original assessment of the property." *Id.*

{¶ 17} Schwartz appealed and asserts four propositions of law.[1]

**ANALYSIS**

{¶ 18} "A party seeking an increase or decrease in valuation bears the burden of proof before a board of revision." *Snavely v. Erie Cty. Bd. of Revision*, 78 Ohio St.3d 500, 503, 678 N.E.2d 1373 (1997). Likewise, "[w]hen cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant * * * to prove its right to an increase [in] or decrease from the value determined by the board of revision." *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). To meet that burden, the appellant "must present competent and probative evidence to make its case"; it is not enough to merely introduce evidence that calls the board of revision's valuation into question. *Id.*

{¶ 19} This court reviews BTA decisions only to determine whether they are "reasonable and lawful." R.C. 5717.04. In doing so, we defer to the BTA's factual findings, including determinations of property value, as long as they are supported by reliable and probative evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. By contrast, we review the BTA's legal determinations de novo. *Crown Communication, Inc. v. Testa*, 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16.

---

[1] In their brief, the county appellees assert that Schwartz failed to serve the tax commissioner with the notice of appeal, a jurisdictional defect under R.C. 5717.04. But Schwartz later produced certified-mail information indicating that the commissioner had been timely served.

***The BTA erred by rejecting the 2011 HUD sale price as evidence of value***

**{¶ 20}** Schwartz's first proposition of law asserts that the BTA acted unreasonably and unlawfully by finding that the 2011 sale price for the property, $5,000, was not the best evidence of value.[2]

<u>The 1851 Ohio Constitution did not implicitly nullify R.C. 5713.04's restriction on using prices from an auction or forced sale</u>

**{¶ 21}** As an initial matter, Schwartz argues that the 1851 Ohio Constitution implicitly nullified the statutory provision that states that "[t]he price for which such real property would sell at auction or forced sale shall not be taken as the criterion of its value." R.C. 5713.04.

**{¶ 22}** The General Assembly initially adopted a restriction on using prices from auctions and forced sales as evidence of property value in 1846, in language very similar to that of current R.C. 5713.04. *See* 44 Ohio Laws 91. Five years later, Ohioans approved the 1851 Ohio Constitution. Article XII, Section 2 of the 1851 Constitution required the General Assembly to pass laws taxing real property "according to its true value in money."[3] 50 Ohio Laws 3, 26. Schwartz contends that "the adoption of Article XII, Section 2, elevating to constitutional status the command that real property be taxed 'according to its true value in money' by implication nullified the conflicting statutory language" about not treating auction and forced sale prices as the criterion of value.

**{¶ 23}** Repeal by implication, even by a constitutional provision, has long been disfavored. *See State ex rel. Evans v. Dudley*, 1 Ohio St. 437, 441 (1853); *State ex rel. Stokes v. Probate Court of Cuyahoga Cty.*, 17 Ohio App.2d 247, 249-

---

[2]Although Schwartz did not seek a valuation of $5,000 before the BOR or the BTA (he requested a reduction to $30,000), the BTA expressly found that the $5,000 HUD sale price was "not the best evidence" of the property's true value under R.C. 5713.04. 2013 WL 6834186, at *1, citing *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489 ("*Fenco*").

[3]Article XII, Section 2 has since been amended to require the legislature to enact laws taxing real property "by uniform rule according to value." *See* 1929 H.J.Res. No. 8, 113 Ohio Laws 790.

250, 246 N.E.2d 607 (8th Dist.1969). To determine whether a constitutional provision implicitly repealed a statutory provision, this court considers whether there is a clear "repugnancy between the provisions" and whether they are "so contrary to each other that they cannot be reconciled." *Evans* at 441. If the General Assembly could have enacted the same law even after the adoption of the later constitutional language, then the law "must be held constitutional." *State v. Medbery*, 7 Ohio St. 522, 528 (1857). If not, then the law "must be held unconstitutional and void." *Id.*

{¶ 24} Here, the statutory provision at issue is reconcilable with the 1851 constitutional requirement to tax property "according to its true value in money." The auction-and-forced-sale provision of R.C. 5713.04 codifies a general presumption that a sale price from an auction or forced sale is not good evidence of a property's value because the underlying transaction was not voluntary and at arm's-length. *See Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, 20 N.E.3d 1086, ¶ 2. In other words, the provision instructs assessors *how* to determine a property's true value; it does not tell them to tax a property sold at auction or in a forced sale for anything other than its true value.

{¶ 25} In short, the 1851 Ohio Constitution did not implicitly nullify the auction-and-forced-sale provision of R.C. 5713.04.

### The BTA acted unreasonably by finding that this transaction was not voluntary and at arm's-length

{¶ 26} Next, Schwartz argues that even if R.C. 5713.04 is constitutional, the auction-and-forced-sale provision does not foreclose reliance on the 2011 sale price as the best evidence of the property's value.

{¶ 27} Under R.C. 5713.04, the price from an auction or forced sale is presumptively *not* evidence of a property's value, absent proof that the transaction occurred at arm's-length between typically motivated parties. *See Olentangy*

*Local Schools*, 141 Ohio St.3d 243, 2014-Ohio-4723, 20 N.E.3d 1086, at ¶ 2; *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 26 ("*Fenco*").

{¶ 28} This court regards HUD sales as "forced sales" for purposes of R.C. 5713.04 because they are generally not indicative of value. *Fenco* at ¶ 21. As we explained in *Fenco*,

> [HUD] serves as a "guarantor of loans which are made by a mortgage lending institution to a mortgagor property owner," so that when the lending institution forecloses on the defaulting owner, the lender "obtains title to the property, often as a result of judicial sale," after which the lender transfers title to HUD "for the amount of the Guarantee."

*Id.* at ¶ 28, quoting *Helfrich v. Licking Cty. Bd. of Revision*, BTA No. 2007-N-414, 2008 WL 3198139, *4 (July 29, 2008). HUD thus "obtains the property 'under duress, and obviously seeks to divest itself of the property for at least the amount of its guarantee.' " *Fenco* at ¶ 29, quoting *Matic v. Mahoning Cty. Bd. of Revision*, BTA No. 1990-H-1114, 1992 WL 380954, *4 (Dec. 11, 1992). In short, a sale of foreclosed property by HUD is generally regarded as a transaction that is not a voluntary sale between typically motivated market participants. *Fenco* at ¶ 22.

{¶ 29} As in *Fenco*, the sale in question here was a HUD sale. Here, HUD guaranteed a loan by Huntington Bank to a previous owner of 3259 Desota Avenue. The bank obtained title to the property at a sheriff's sale in August 2010 (apparently after the owner defaulted), then transferred title to HUD. After approximately one year, HUD sold the property to Schwartz for $5,000. Under

*Fenco*, this $5,000 sale price is presumptively not evidence of the property's value.[4]

{¶ 30} However, the record indicates that Schwartz successfully rebutted this presumption with evidence that the 2011 sale was voluntary and at arm's length. The property was on the market for three years (including one year after the property was transferred to HUD). Victor testified that a for-sale sign was posted at the property and he made several offers to buy it. The owner rejected Victor's offers and, indeed, was planning to sell to a different prospective buyer. When that sale fell through, the owner contacted Victor and advised him that the property would be razed unless he wanted to buy. Schwartz also cited other sales on Desota Avenue as proof that the market could not bear a higher sale price at that time.

{¶ 31} Under these circumstances, we hold that the BTA acted unreasonably when it found that the property's 2011 sale price was not the best evidence of its tax year 2011 value. Accordingly, we find merit in Schwartz's first proposition of law and reverse the decision of the BTA.

### CONCLUSION

{¶ 32} For the foregoing reasons, we reverse the decision of the BTA and remand with instructions that the $5,000 sale price be used as the property's value for tax year 2011.

Decision reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and O'NEILL, JJ., concur.

---

[4]Schwartz argues that *Fenco* was wrongly decided. But his arguments for overturning that decision are not compelling. Alternatively, he argues that *Fenco* does not apply to this case because here the county appellees did not submit evidence supporting their valuation. But, as explained above, the proponent of a sale price from a HUD foreclosure sale bears the burden to overcome a presumption of involuntariness, not the other way around.

KENNEDY and FRENCH, JJ., dissent.

_____

**FRENCH, J., dissenting.**

{¶ 33} This case turns on whether the 2011 sale price of a property owned by the United States Department of Housing and Urban Development ("HUD") is the best evidence of that property's value for tax year 2011. The Board of Tax Appeals ("BTA") found that the sale in question was *not* the best evidence of value. Because that determination was neither unlawful nor unreasonable on the record before us, I would defer to the BTA's judgment about both the nature of the HUD sale and the value of the subject property. I therefore respectfully dissent from the majority's contrary holding.

{¶ 34} This court has long recognized that a HUD sale price is presumptively *not* evidence of a property's value under R.C. 5713.04. *See Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 21-26 ("*Fenco*"); *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, 23 N.E.3d 1086, ¶ 2. However, a property owner can rebut this presumption with evidence that a particular HUD sale was an arm's-length transaction between typically motivated parties. *See Fenco* at ¶ 26.

{¶ 35} The per curiam opinion correctly identifies this legal standard, but it fails to accord the required deference to the BTA's determination that appellant, Fred P. Schwartz, failed to rebut the *Fenco* presumption in this case. This court must defer to the BTA's factual findings, including determinations of property value, as long as they are supported by reliable and probative evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. We will "reverse BTA findings only when there is a total absence of evidence to support a particular finding." *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 14. This deference is appropriate

because the BTA has wide discretion in determining the weight of evidence before it and the credibility of witnesses. *Apple Group Ltd. v. Medina Cty. Bd. of Revision*, 139 Ohio St.3d 434, 2014-Ohio-2381, 12 N.E.3d 1188, ¶ 14.

{¶ 36} Here, the BTA was responsible for deciding whether Schwartz met his burden to prove that the HUD sale in question was an arm's-length transaction. In this regard, the BTA could consider evidence of whether the sale was "voluntary, *i.e.,* without compulsion or duress," whether it "[took] place in an open market," and whether the parties to the transaction acted "in their own self-interest." *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 25, 546 N.E.2d 932 (1989). At the BTA hearing, the only evidence Schwartz presented on this issue was testimony from his representative, Vladimir Victor. The BTA had the opportunity to evaluate Victor's credibility and the weight of his testimony, and it found that Schwartz failed to meet his burden to rebut the *Fenco* presumption. Because it is not this court's role to "sit either as a super BTA or as a trier of fact de novo," *DAK, PLL v. Franklin Cty. Bd. of Revision*, 105 Ohio St.3d 84, 2005-Ohio-573, 822 N.E.2d 790, ¶ 16, and because the BTA's finding is neither unreasonable nor unlawful under R.C. 5717.04, I regard it as our duty to affirm it.

{¶ 37} In light of this conclusion, it is necessary to briefly address Schwartz's remaining three propositions of law, which the per curiam opinion does not reach.

{¶ 38} In his second proposition of law, Schwartz argues that even if the HUD sale was not the best evidence of value, the BTA acted unreasonably and unlawfully by rejecting his evidence of comparable sales. As with the above determination, I would defer to the BTA's finding that these comparables were not probative evidence of value because they amounted to "nothing more than a list of raw sales data." BTA No. 2013-608, 2013 WL 6834186, *2 (Nov. 13, 2013).

**{¶ 39}** In his third proposition of law, Schwartz argues that the BTA applied the incorrect burden of proof. According to Schwartz, once he presented probative, competent evidence that the fiscal officer's valuation was speculative and inflated, the burden of proof shifted to the county to prove its valuation. But Schwartz misunderstands his burden. As the appellant, Schwartz must introduce evidence of a *specific* valuation.[5] He is not entitled to a reduction simply by presenting evidence that the fiscal officer's valuation was too high. *See Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001).

**{¶ 40}** Finally, Schwartz argues that the BTA "failed to act as a fair and impartial tribunal" in light of the errors asserted in his first three propositions of law. This due-process claim fails because Schwartz's first three propositions of law are unpersuasive and because, contrary to his claims, the BTA's decision adequately addressed his arguments.

**{¶ 41}** For these reasons, I would affirm the decision of the BTA. I therefore respectfully dissent.

KENNEDY, J., concurs in the foregoing opinion.

_____

J. Alex Morton, for appellant.

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Reno J. Oradini Jr., Assistant Prosecuting Attorney, for appellees.

_____

---

[5]Schwartz requested a valuation of $30,000, but he offered no explanation of how he arrived at that value.