[Cite as *Hersh v. Cuyahoga Cty. Bd. of Revision*, 2020-Ohio-3596.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SHELBY HERSH,                           :

    Plaintiff-Appellant,            :

                        No. 109035

    v.                              :

CUYAHOGA COUNTY BOARD OF                 :
REVISION, ET AL.,

                               :

    Defendants-Appellees.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 2, 2020

---

Administrative Appeal from the Board of Tax Appeals
Case No. 2018-1129

---

### *Appearances:*

Sleggs, Danzinger & Gill Co., L.P.A., Steven R. Gill, and
Todd W. Sleggs, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Reno J. Oradini, Jr., Assistant Prosecuting
Attorney, *for appellees*.

---

MICHELLE J. SHEEHAN, J.:

{¶ 1} Plaintiff-appellant property owner Shelby Hersh ("Hersh") appeals from a decision of the Board of Tax Appeals ("BTA") that affirmed the Cuyahoga

County Board of Revision's ("BOR") valuation of residential property for the 2017 tax year. Finding the BTA's decision was reasonable and lawful, we affirm.

## I. Procedural History and Substantive Facts

{¶ 2} Hersh owns residential property located on Sheldon Road in Lyndhurst, Ohio. He purchased the property from the secretary of the United States Department of Housing and Urban Development ("HUD") in March 2017. The county's fiscal officer valued Hersh's property at $83,000 for the 2017 tax year. Thereafter, Hersh filed a complaint against the valuation, seeking a reduction of the property value to $70,400.

{¶ 3} On July 25, 2018, the BOR held a hearing. Hersh did not appear. Rather, his counsel argued on his behalf and presented the following information: listing information, including a photo of the property; HUD settlement statement showing the purchase price of $70,400; a conveyance fee statement showing the purchase price of $70,400; and a sale verification questionnaire that included a statement that the property was listed with a real estate agent. At the hearing, Hersh's counsel stated that "both the seller and the buyer had brokers * * * at the property. The buyer was represented by Murwood Real Estate [and t]he seller, JBS Realty."

{¶ 4} Thereafter, the BOR retained the fiscal officer's valuation, finding as follows:

> Sale referenced in support of value was a HUD sale and not considered arm's length. No other evidence was provided to show

the sale price was indicative of value. BOR research indicates current market value is supported by the market. No change.

{¶ 5} Hersh then appealed the BOR's decision to the BTA, and the BTA affirmed the BOR. The BTA stated in its decision that it decided the case on the notice of appeal, the fiscal officer's statutory transcript, and the parties' written argument. In affirming the BOR's decision, the BTA found that the sale at issue was a HUD sale, a HUD sale is generally not an arm's-length sale, and Hersh failed to rebut the presumption that the HUD sale of his property was not an arm's-length transaction. The BTA additionally found "no conclusive evidence the property was openly and systematically marketed" and Hersh failed to provide "market data to show no higher price could be obtained." And although the BTA agreed with Hersh that the sale price was "not far from the fiscal officer's value," it found this fact irrelevant to the question of whether Hersh rebutted the presumption that HUD sales are not arm's-length transactions.

{¶ 6} Hersh now appeals the BTA's decision in three interrelated assignments of error, which we address together: (1) the BTA decision and order is unreasonable and unlawful because it adds additional requirements to proving a sale that does not exist in the statute and case law; (2) the BTA decision and order is unreasonable and unlawful because the unrebutted evidence in the record showed that the property was marketed by the seller prior to the sale and both parties to the sale were represented by brokers; and (3) the BTA decision and order applies a strict reading of *Schwartz v. Cuyahoga Cty. Bd. of Revision*, 143 Ohio

St.3d 496, 2015-Ohio-3431, 39 N.E.3d 1223, over the more recent decision in *Dauch v. Erie Cty. Bd. of Revision*, 149 Ohio St.3d 691, 2017-Ohio-1412, 77 N.E.3d 943.

## II. Law and Analysis

{¶ 7} Hersh contends that the BTA's decision was unreasonable and unlawful because the evidence shows that the property had been marketed prior to the sale and the BTA improperly imposed an additional requirement that the property be marketed for a "significant period." Hersh also seemingly argues that the facts in *Schwartz* support his argument, yet the board should have applied the reasoning provided in *Dauch*.

{¶ 8} "'A party seeking an increase or decrease in valuation bears the burden of proof before a board of revision.'" *Schwartz v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga No. 106659, 2018-Ohio-4712, ¶ 21, quoting *Snavely v. Erie Cty. Bd. of Revision*, 78 Ohio St.3d 500, 503, 678 N.E.2d 1373 (1997). Likewise, "[w]hen cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant * * * to prove its right to an increase [in] or decrease from the value determined by the board of revision." *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). To meet that burden, the appellant "must present competent and probative evidence to make its case." *Id.* It is therefore not enough to merely introduce evidence that calls the board of revision's valuation into question. *Id.*

{¶ 9} We review BTA decisions only to determine whether they are "reasonable and lawful." R.C. 5717.04. In so doing, we defer to the BTA's factual findings, including determinations of property value, as long as they are supported by reliable and probative evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. But we review the BTA's legal determinations de novo. *Crown Communication, Inc. v. Testa*, 136 Ohio St.3d 209, 2013-Ohio-3126, 992 N.E.2d 1135, ¶ 16.

{¶ 10} Hersh claims that the March 2017 sale of the Sheldon Road property evidences the correct value of the property. A recent arm's-length transaction generally constitutes the best evidence of a property's value. *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 31-32. HUD sales, however, are presumed not to be arm's length under R.C. 5713.04. *See Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, ¶ 21-26 ("*Fenco*"); *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 141 Ohio St.3d 243, 2014-Ohio-4723, 23 N.E.3d 1086, ¶ 2. "Under R.C. 5713.04, the price from an auction or forced sale is presumptively not evidence of a property's value, absent proof that the transaction occurred at arm's length between typically motivated parties." *Schwartz*, 143 Ohio St.3d 496, 2015-Ohio-3431, 39 N.E.3d 1223, at ¶ 27. And the Ohio Supreme Court considers HUD sales as "forced sales" for purposes of R.C. 5713.04 "because they are generally not indicative of value." *Id.* at ¶ 28. A taxpayer can therefore rebut the presumption by providing evidence

that the transaction occurred at arm's length between "typically motivated parties." *Id.* at ¶ 27.

{¶ 11} Here, Hersh claims he rebutted the presumption that the sale was not an arm's-length transaction by providing the following: a statement that the property was marketed by the seller and both parties were represented by brokers, a copy of the listing, a copy of settlement statement, and a copy of the verification questionnaire that shows there were no conditions of sale. In support, he cites to the Ohio Supreme Court in *Schwartz.*

{¶ 12} In *Schwartz,* the property owner appealed to the BTA, requesting a reduction in the value of the property. Schwartz contended that the 2011 sale of the property for $5,000 was a voluntary, arm's-length transaction in that the property was publicly advertised as part of HUD's "inventory of foreclosed properties," Schwartz was the high bidder, and he did not have a special relationship with HUD. *Schwartz* at ¶ 13. In support, he presented the testimony of a representative, Vladimir Victor, for whom Schwartz held the property in trust.

{¶ 13} Victor testified that he had learned that the property was for sale while he was caring for an adjacent home on the same street as the property at issue. The property was listed with a realty company, and a sale sign was posted in the yard for three years. Victor testified that he made several attempts to purchase the property, but his offers were not accepted. Later, according to Victor, the realty company contacted Victor after a sale to another buyer fell through. Victor testified that the realty company told Victor that if he did not buy it, the property

would be demolished.  *Schwartz*, 143 Ohio St.3d 496, 2015-Ohio-3431, 39 N.E.3d 1223, at ¶ 8.

{¶ 14} On appeal, the Ohio Supreme Court found that the property owner rebutted the presumption that the HUD sale was not an arm's-length transaction, stating as follows:

> [T]he record indicates that Schwartz successfully rebutted this presumption with evidence that the 2011 sale was voluntary and at arm's length.  The property was on the market for three years (including one year after the property was transferred to HUD). Victor testified that a for-sale sign was posted at the property and he made several offers to buy it.  The owner rejected Victor's offers and, indeed, was planning to sell to a different prospective buyer.  When that sale fell through, the owner contacted Victor and advised him that the property would be razed unless he wanted to buy it. Schwartz also cited other sales on [the same street as the subject property] as proof that the market could not bear a higher sale price at that time.

*Id.* at ¶ 30.  The court therefore found under the above circumstances that the BTA acted unreasonably when it found that the property's 2011 sale price was not the best evidence of its tax year 2011 value.  *Id.* at ¶ 31.

{¶ 15} Unlike in *Schwartz*, however, Hersh failed to provide any testimony from a person with firsthand knowledge of the HUD sale in March 2017, which may have rebutted the presumption that such sale was a forced sale.  In *Schwartz*, the property owner's representative testified about the facts and circumstances of the HUD sale and the condition of the property.  Hersh did not testify at the BOR's hearing, nor did he provide the testimony of any individual possessing firsthand knowledge of the sale.  Rather, his counsel argued for a reduction in value and

presented documents that purportedly represented the property's purchase price of $70,400, including listing information and a settlement statement. The record contains no evidence that counsel had firsthand knowledge of the sale or the documents he presented. And statements of counsel are not evidence. *See Corporate Exchange Bldgs. IV & V, Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299, 695 N.E.2d 743 (1998). *See also Hardy v. Delaware Cty. Bd. of Revision*, 106 Ohio St.3d 359, 2005-Ohio-5319, 835 N.E.2d 348, ¶ 14 (discussing adverse consequences that may result from a party's failure to present witness testimony before the board and electing instead to rely upon documentary exhibits discussed by counsel).

{¶ 16} Moreover, the Multiple Listing Service listing for the property from the HUD sale is "unreliable hearsay." *See, e.g., Dellick v. Eaton Corp.*, 7th Dist Mahoning No. 03-MA-246, 2005-Ohio-566, ¶ 25. And finally, unlike in *Schwartz,* 143 Ohio St.3d 496, 2015-Ohio-3431, 39 N.E.3d 1223, Hersh failed to provide evidence or market data to show that no higher price could be obtained.

{¶ 17} Hersh encourages this court to apply the Supreme Court's reasoning in *Dauch*, 149 Ohio St.3d 691, 2017-Ohio-1412, 77 N.E.3d 943. In *Dauch*, the Supreme Court held that (1) the BTA properly considered conveyance fee statements that were included in the statutory transcripts; and (2) the taxpayer, who sought to decrease the valuation of the properties based on the prices he paid for them, met his initial burden of showing that the purchases were made at arm's length through conveyance-fee statements, the property-record cards, and other

documents without having to appear at the BOR's hearing. *Id.* at ¶ 19. *Dauch*, however, did not concern a HUD sale. And as previously discussed, HUD sales are forced sales, and unlike regular sales, they are presumptively not arm's-length transactions in which HUD "obtains the property 'under duress, and obviously seeks to divest itself of the property for at least the amount of its guarantee.'" *Fenco*, 127 Ohio St.3d 63, 2010-Ohio-4907, 936 N.E.2d 489, at ¶ 29, quoting *Matic v. Mahoning Cty. Bd. of Revision*, BTA No. 1990-H-1114, 1992 Ohio Tax LEXIS 1544, 4 (Dec. 11, 1992). Therefore, *Dauch* does not apply here.

{¶ 18} Hersh also contends that the BTA improperly imposed an additional requirement that a property owner demonstrate the property was marketed for a "significant period." In support, Hersh, taking the statement out of context, cites to the BTA's decision stating that "[Hersh] does not claim that this property was on the market for any significant period." We do not find the BTA was placing an additional burden upon Hersh, but rather, the BTA was distinguishing the facts presented in *Schwartz* in response to Hersh's argument that his case can be likened to the *Schwartz* case. In comparing the cases, the BTA stated that while the property in *Schwartz* had been on the market for three years, Hersh does not make the same claim.

{¶ 19} In light of the above, we find Hersh failed to rebut the presumption that the sale of the Sheldon Road property was not an arm's-length transaction, and the BTA did not improperly impose additional requirements that the property

be marketed for a significant period of time.  We therefore find the BTA's decision was reasonable and lawful.

**{¶ 20}** Hersh's assignments of error are overruled.

**{¶ 21}** Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR