**[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 29.]**

WJJK INVESTMENTS, INC., APPELLANT, *v*. LICKING COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *WJJK Investments, Inc. v. Licking Cty. Bd. of Revision*, 1996-Ohio-437.]

*Taxation—Real property—Board of Tax Appeals' valuation of mobile home park neither unreasonable nor unlawful, when.*

(No. 95-2119—Submitted April 4, 1996—Decided July 3, 1996.)

APPEAL from the Board of Tax Appeals, No. 94-B-1251.

_____

{¶ 1} Appellant, WJJK Investments, Inc. ("WJJK"), owns the 24.43-acre Villa Vista Mobile Home Park in Licking County. The Licking County Auditor valued WJJK's real property at a true value of $777,300 for the tax year 1993. In WJJK's complaint filed with the Licking County Board of Revision ("BOR"), it contended that its real property should be valued at $700,000. The BOR, however, affirmed the auditor's valuation. In WJJK's notice of appeal filed with the Board of Tax Appeals ("BTA"), it contended that its real property should be valued at $475,000.

{¶ 2} The only witness testifying for WJJK before the BTA was its president, James Karsko. Karsko presented copies of the auditor's property record cards for seven different properties. The property record cards itemized the values the auditor had assigned to the land, buildings, and mobile home sites located on each of the properties. The first property record card reviewed by Karsko was for a 31.319-acre parcel which abuts the WJJK property and contains seven holes of the Burning Tree Golf Course. The Burning Tree land was valued by the auditor at an average value of $2,624 per acre. The next two property record cards reviewed by Karsko were for nearby farms of 71 and 158.50 acres. The auditor

assigned values of $1,614 and $1,139 per acre, respectively, to the farm lands, exclusive of buildings.

{¶ 3} Continuing to use the property record cards, Karsko then shifted to a review of four mobile home parks. The mobile home parks ranged in size from 25.95 acres with 170 mobile home sites to 10.29 acres with 78 mobile home sites. The auditor divided the land within the four mobile home parks into different categories, and valued it at amounts that ranged from $45,000 to $4,200 per acre. The current value of mobile home sites in the four mobile home parks ranged from $840 to $2,700 per site. To determine the true value of the mobile home parks the auditor took the sum of the values for the land, buildings, and mobile home sites.

{¶ 4} The usable land at Villa Vista Mobile Home Park was assessed by the auditor at $15,000 per acre, and the mobile home sites were assessed at a true value of $5,526 per site.

{¶ 5} Karsko also introduced a copy of Ohio Adm.Code Chapter 3701-27, which contains manufactured home park rules promulgated by the Department of Health.

{¶ 6} The appellees simply introduced a copy of the BTA's decision in *WJJK Investments, Inc. v.Licking Cty. Bd. of Revision* (May 24,1991), BTA Nos. 89-B-733 and 90-1089, unreported, which valued the same real property involved in this appeal, for the tax years 1988 and 1989, at $701,600. The BTA's 1991 decision and the auditor's property card both disclose that the WJJK property had been purchased in 1988 for $737,000.

{¶ 7} The BTA affirmed the BOR's valuation, and WJJK filed a notice of appeal with this court.

{¶ 8} This cause is now before this court upon an appeal as of right.

_____

*Van Winkle & Maxwell* and *Richard M. Van Winkle,* for appellant.

*Robert L. Becker,* Licking County Prosecuting Attorney, and *Pauline E. O'Neill,* Assistant Prosecuting Attorney, for appellees.

_____

***Per Curiam.***

{¶ 9} WJJK first contends that the assessment of its real property violates Section 2, Article XII of the Ohio Constitution, which states, "Land and improvements thereon shall be taxed by uniform rule according to value * * *."

{¶ 10} In *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 413, 25 O.O.2d 432, 434, 195 N.E.2d 908, 910, we stated: "Taxation by uniform rule within the requirement of the constitutional provision requires uniformity in the mode of assessment." In this case WJJK contends that its property has "been valued in an entirely different manner than the comparable properties." However, WJJK does not specify the manner in which its property was valued differently from other properties. A review of the auditor's property record cards shows that the same assessment ratio was used for all the properties. Merely showing that two parcels of property have different values without more does not establish that the tax authorities valued the properties in a different manner. Therefore, we reject as unsubstantiated WJJK's contention that the assessment against it violates the constitutional requirement of uniformity.

{¶ 11} WJJK also contends that its real property was overvalued. The primary basis for this contention is its claim that its mobile home sites were overvalued. WJJK had the burden to provide sufficient evidence to prove its claim of overvaluation. *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 527 N.E.2d 874.

{¶ 12} WJJK attempted to satisfy this burden by using the auditor's property cards to show that the mobile home sites at other mobile home parks were assessed at lower values than those of WJJK. While Karsko dwelled on the differences between the values for the Villa Vista mobile home sites and those of

the other mobile home parks, he never explained what factors the auditor used to arrive at the value of a mobile home site. Karsko admitted that he had no independent knowledge of whether the information on the property record cards was correct.

{¶ 13} Another unanswered question is, what happened to the buildings on WJJK's property? The BTA's 1991 decision concerning this property stated that WJJK's appraiser valued just a laundry and storage building and a sewage plant at over $91,000. The auditor's current property card for Villa Vista does not itemize those buildings. If those buildings no longer exist, that fact should have been brought to the attention of the BTA. On the other hand, if those buildings still exist their value apparently was included in the value of the mobile home sites for Villa Vista. Thus, the valuation for the Villa Vista mobile home sites may include factors such as the value of buildings which are not included in the valuation of the mobile home sites at the other mobile home parks.

{¶ 14} When he was first asked by the hearing examiner if he had an opinion of the market value of WJJK's real property, Karsko said he could not break it down between the business and property values. However, a moment later he testified that in his opinion WJJK's mobile home park was worth $363,600. If we use the same values that Karsko stated he used, we arrive at a valuation of $443,400, not $363,600.

{¶ 15} While an owner may testify as to the value of his or her property, there is no requirement that the finder of fact accept that value as the true value of the property. *Amsdell v. Cuyahoga Cty. Bd. of Revision* (1994), 69 Ohio St.3d 572, 635 N.E.2d 11. In this case, because WJJK is a corporation, Karsko's opinion of value was that of a corporate officer and not that of an owner. Karsco did not show that he met the requirements which we set forth in *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, for a corporate officer of a closely held corporation to testify as to value. Karsko's opinion of value was

4

further undermined by the fact that during various prior stages of this proceeding WJJK previously had valued the same property at other values. In the complaint signed by Karsko and filed with the BOR, WJJK stated that the true value of the property was $700,000; in the notice of appeal signed by Karsko and filed with the BTA, WJJK stated that the true value of the property was $475,000.

{¶ 16} The BTA as the trier of fact "has wide discretion to determine the weight given to evidence and the credibility of witnesses before it." *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St.3d 198, 201, 527 N.E.2d 874, 877. In this case the BTA reviewed the evidence presented by WJJK and found it to be insufficient to support a lower valuation. This court is not a " 'super' Board of Tax Appeals." *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 400, 20 O.O.3d 349, 351, 422 N.E.2d 846, 848. In *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 157, 573 N.E.2d 661, 663, we stated that "[a]bsent a showing of an abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given their testimony will not be reversed by this court." There has been no showing that the BTA abused its discretion in placing no credibility in Karsko's valuation of WJJK's property. Without Karsko's opinion of value there was no evidence of value that WJJK's real property was overvalued, and the BTA was correct in affirming the value determined by the BOR. *Cleveland Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1994), 68 Ohio St.3d 336, 626 N.E.2d 933.

{¶ 17} Having failed to prove that its property was overvalued, WJJK contends that it is being discriminated against "because of the lower building values placed on comparable properties' buildings." Having made such an allegation, WJJK has the burden to prove the discrimination. Accepting that WJJK's property was properly valued, in order for WJJK to prove discrimination it has to prove that other comparable properties were in fact undervalued and that the undervaluation was intentional and systematic. In *Boothe Fin. Corp. v. Lindley* (1983), 6 Ohio

St.3d 247, 249, 6 OBR 315, 317, 452 N.E.2d 1295, 1298, a case involving discrimination in the valuation of personal property, we quoted *S. Ry. Co. v. Watts* (1923), 260 U.S. 519, 526, 43 S.Ct. 192, 195, 67 L.Ed. 375, 387, as follows: "The rule is well settled that a taxpayer, although assessed on not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class belonging to others."

{¶ 18} The evidence which WJJK presented to prove undervaluation of the other properties was the same evidence that it presented to show overvaluation of its property. In an attempt to prove its contention that all mobile home sites should be valued at nearly the same value, WJJK introduced a copy of the rules for mobile home parks promulgated by the Ohio Department of Health. While these rules set forth numerous minimum standards for mobile home sites, they do not set forth rules for the valuation of mobile home sites.

{¶ 19} One of the four mobile home parks which WJJK used as a comparison was the Willow Brook Mobile Home Park. The auditor's record card shows that it was sold in 1990 for $740,000. The auditor assessed the Willow Brook Mobile Home Park at $744,200 for 1993. WJJK offered no explanation to show why the Willow Brook Mobile Home Park should be considered undervalued. Just as the evidence presented by WJJK was insufficient to prove overvaluation, it was likewise insufficient to prove undervaluation of the other properties.

{¶ 20} In addition to its failure to meet its burden to prove undervaluation, WJJK also failed to meet its burden of proving that the alleged undervaluation was intentional and systematic, and not the result of mere errors of judgment by the assessing officials. *Sunday Lake Iron Co. v. WakefieldTwp.* (1918), 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154; see, also, *Boothe, supra; Meyer v. Cuyahoga Cty. Bd. of Revision* (1979), 58 Ohio St.2d 328, 12 O.O.3d 305, 390 N.E.2d 796; and *Shaw v. Cuyahoga Cty. Bd. of Revision* (1982), 70 Ohio St.2d 255, 24 O.O.3d 343, 436 N.E.2d 1033. In *Benedict v. Hamilton Cty. Bd. of Revision* (1959), 170 Ohio St.

62, 63, 9 O.O.2d 458, 459, 162 N.E.2d 479, 480, we stated: "A particular parcel, because of its location and the improvements thereon, may properly be given a higher value than other parcels in the same neighborhood, without discrimination resulting. After all, true value of the particular property is the controlling consideration * * *."

{¶ 21} For the reasons stated we find the decision of the BTA is neither unreasonable nor unlawful and it is affirmed.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

_____