[Cite as *Huber Hts. City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2012-Ohio-193.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

BOARD OF EDUCATION OF THE            :
HUBER HEIGHTS CITY SCHOOLS

 Plaintiff-Appellee            :   C.A. CASE NO. 24686

v.            :   T.C. NO. 2010-M-2856

MONTGOMERY COUNTY BOARD            :   (Board of Tax Appeals)
OF REVISION, et al.

 Defendants-Appellees            :

and            :

OAKCREST MANOR            :

 Defendant-Appellant            :

. . . . . . . . . .

**O P I N I O N**

Rendered on the  20th  day of  January , 2012.

. . . . . . . . . .

JEFFREY A. RICH, Atty. Reg. No. 0017495 and MARK H. GILLIS, Atty. Reg. No. 0066908 and ALLISON J. CRITES, Atty. Reg. No. 0082162, 6400 Riverside Drive, Suite D, Dublin, Ohio 43017
 Attorneys for Plaintiff-Appellee

LAURA G. MARIANI, Atty. Reg. No. 0063284, Prosecutor's Office, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
 Attorney for Defendants-Appellees

CHARLES F. ALLBERY, III, Atty. Reg. No. 0006244, 137 N. Main Street, Suite 500, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Oakcrest Manor SD, Inc., ("Oakcrest") filed a Complaint Against the Valuation of Real Property, seeking a reduction in the value of its commercial property located at 6550-6600 Brandt Pike in Huber Heights (Parcel No. P70-03912-0050). The Montgomery County Board of Revision ("BOR") agreed to reduce the value of the property. The Board of Education of Huber Heights City Schools ("Board of Education") appealed the decision of the BOR to the Ohio Board of Tax Appeals ("the BTA"). In response to the Board of Education's appeal, the BTA remanded Oakcrest's complaint to the BOR and ordered the BOR to dismiss the Complaint. Oakcrest appeals from the Decision and Order of the BTA.

I

{¶ 2} Oakcrest purchased the property located at 6550-6600 Brandt Pike, known as Brandt Pike Shopping Center, in 2006. In March 2009, Oakcrest filed a complaint challenging the valuation of the property for 2008 ("the 2008 complaint") on the basis of a change in occupancy of at least fifteen percent. In October 2009, the BOR dismissed the 2008 complaint because representatives of Oakcrest had failed to attend two scheduled hearings. Oakcrest filed an appeal in the Montgomery County Court of Common Pleas, but, due to the untimeliness of the appeal, the court dismissed the appeal for lack of jurisdiction.

{¶ 3} In March 2010, Oakcrest filed a complaint challenging the valuation of its property for 2009 ("the 2009 complaint"). Again, the complaint was based on a change in

occupancy of at least fifteen percent. The BOR considered the complaint and reduced the value of the property from approximately $2.4 million to $1.4 million. The Board of Education appealed to the BTA,[1] arguing that Oakcrest's 2009 complaint should have been dismissed because it was the second complaint filed within a single interim period and failed to satisfy the statutory requirements for filing a successive complaint.

{¶ 4} The BTA concluded that Oakcrest's 2009 complaint was "a second filing within a single triennial period, and the complaint did not meet the exceptions [permitting a second filing] found in R.C. 5715.19(A)(2)." The BTA "remanded to the BOR with instructions to dismiss the complaint before it."

{¶ 5} Oakcrest appeals from the BTA's Decision and Order, raising four assignments of error. All of the assignments challenge the BTA's conclusion that the 2009 complaint did not fall within the exceptions allowing a second filing or argue that Oakcrest was otherwise denied its right to a full and fair hearing. We will address the assignments together.

II

{¶ 6} R.C. 5715.19(A)(1) sets forth the general procedure by which a person or entity "owning taxable real property" may file a complaint against the "determination of the total valuation or assessment of any parcel that appears on the tax list." R.C. 5715.19(A)(1)(d).

---

[1]"A property owner may appeal a board of revision's decision to the board of tax appeals or to the court of common pleas, but a governmental entity, such as the county auditor, any board, or a public official may only appeal to the board of tax appeals (BTA). R.C. 5717.01 and 5717.05; *Fuchs v. Cuyahoga Cty. Bd. of Revision* (March 15, 1990), Cuyahoga App. No. 56723." *Berner v. Sodders*, 2d Dist. Clark No. 2010 CA 40, 2010-Ohio-4914, ¶ 33, fn. 2.

Such complaints are filed with the county auditor, who presents "all complaints" to the county board of revision. Pursuant to the statute, each board of education whose district may be affected by a valuation complaint must be given notice of and be made a party to the action. R.C. 5715.19(B).

{¶ 7} With respect to the filing of multiple complaints within any one interim period, R.C. 5715.19(A)(2) states, in pertinent part:

{¶ 8} "No person, board, or officer shall file a complaint against the valuation or assessment of any parcel that appears on the tax list if it filed a complaint against the valuation or assessment of that parcel for any prior tax year in the same interim period, unless the person, board, or officer alleges that the valuation or assessment should be changed due to one or more of the following circumstances that occurred after the tax lien date for the tax year for which the prior complaint was filed and that the circumstances were not taken into consideration with respect to the prior complaint:

{¶ 9} "***

{¶ 10} "(d) An increase or decrease of at least fifteen per cent in the property's occupancy has had a substantial economic impact on the property."

{¶ 11} An interim period is a particular three-year period between updates or reappraisal of a property. *AERC Saw Mill Village, Inc. v. Franklin Cty. Bd. of Revision*, 127 Ohio St.3d 44, 2010-Ohio-4468, 936 N.E.2d 472, ¶ 31. The tax lien date is January 1 of the tax year. R.C. 323.11.

{¶ 12} R.C. 5717.04 requires us to determine whether the BTA's decision was "reasonable" and "lawful." Under this standard, the BTA is responsible for determining

factual issues and, if the record contains reliable and probative support for the BTA's determinations, we must affirm them. *Columbus City School Dist. Bd. of Edn. v. Testa*, __ Ohio St.3d _____, 2011-Ohio-5534, _____ N.E. 2d. _____, ¶ 12, citing *Satullo v. Wilkins,* 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. In the present case, however, we are not called upon to review factual determinations of the BTA, but rather the legal question whether an exception under R.C. 5715.19(A)(2) applied. Because this analysis requires us to construe and apply the language of the statute, we confront a question of law, and our review is de novo. *Id.*, citing *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision,* 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

{¶ 13} The parties in this case do not dispute that Oakcrest's 2008 and 2009 complaints were filed within the same interim period, but they do dispute whether Oakcrest's 2009 complaint fell within the R.C. 5715.19(A)(2)(d) exception to the general prohibition on filing successive complaints within an interim period.

{¶ 14} In its argument to the BTA, Oakcrest contended that its 2009 complaint satisfied the requirements of R.C. 5715.19(A)(2)(d) for the filing of a successive complaint because it "noted * * * a decline in the property's occupancy" and presented evidence that the reduced occupancy had a substantial economic impact on the property. The Board of Education argued, however, that the change in occupancy was insufficient to justify the filing of the 2009 complaint, because Oakcrest failed to establish that the change in occupancy had occurred *after* the filing of the 2008 complaint.

{¶ 15} According to the BTA decision, Tony Struyk, the president of Oakcrest, testified that one of the five units was vacant when Oakcrest purchased the property in 2006

and that two other tenants had defaulted on their leases prior to the beginning of 2008.[2]   A memorandum written by Struyk and attached to Oakcrest's 2009 complaint contained similar information.   In the memo, Struyk stated that "the existing tenants [at the time of the purchase] stopped paying rent almost immediately."   No evidence was presented about when the tenants who stopped paying rent in 2006 left the building, but no evidence suggests that they remained in the building until 2008.

{¶ 16} The BTA concluded that the 2009 complaint was not permitted because the change in occupancy relied upon by Oakcrest did not occur "*after* the tax lien date for the tax year for which the prior complaint was filed."   R.C. 5715.19(A)(2)(d). The BTA described Struyk's testimony as "critical to [its] ultimate conclusion" that the exception Oakcrest sought to invoke had not occurred after the tax lien date applicable to the 2008 complaint. The BTA's conclusion is supported by the record.   Although Oakcrest demonstrated a significant change in occupancy since it took ownership of the property, it did not demonstrate that a change in occupancy had occurred after the tax lien date applicable to the 2008 complaint, so as to justify the filing of another complaint within the interim period.

{¶ 17} Oakcrest also argues that it should have been permitted to file a second complaint within the same interim period because the BOR did not take the change in occupancy into consideration when it "summarily dismissed" the 2008 complaint.   In other words, Oakcrest contends that the dismissal of the 2008 complaint did not bar the filing of a second complaint, because the 2008 complaint was not resolved on the merits.

---

[2] The record does not contain a transcript of this testimony.

{¶ 18} R.C. 5715.19(A)(2) states that a second complaint may not be filed unless one of the enumerated circumstances exists "that occurred after the tax lien date for the tax year for which the prior complaint was filed * * *." Oakcrest's position that the BOR's failure to fully consider and address the change in occupancy (which was also the basis for the 2008 complaint) justified the filing of a second complaint is not supported by the clear language of the statute.

{¶ 19} Moreover, the Supreme Court of Ohio has rejected the argument that a second complaint can be filed if the first complaint of the interim period was not decided on the merits. In *Elkem Metals Co. v. Washington Cty. Bd. of Revisions*, 81 Ohio St.3d 683, 693 N.E.2d 276 (1998), the taxpayer contended that a dismissed property valuation complaint did not constitute a "filing" under R.C. 5715.19(A)(2) for the purpose of prohibiting a second filing in the same interim period. In that case, the complaint was "not * * * filled out properly," such that the BOR "was not empowered to decide the merits." Id. The supreme court found no statutory support for the taxpayer's argument that his first filing should be ignored because it was dismissed for jurisdictional reasons. The court refused to interpret R.C. 5715.19(A)(2) "to provide at least one merit hearing in a triennium" and rejected the taxpayer's argument that it was entitled to "a determination on the merits." The court opted to follow the clear language of the statute as written and found no support for the taxpayer's interpretation of the statute. Thus, the court concluded that the BTA's decision allowing the filing of a second complaint in that case was unreasonable and unlawful.

{¶ 20} In *Elkem*, the shortcoming in the filing of the first complaint was in the completion of the forms and was jurisdictional; in this case, the 2008 complaint was

dismissed for Oakcrest's repeated failure to appear at hearings. But based on the supreme court's conclusion in *Elkem* that the failure of a taxpayer's first complaint *other than on the merits* did not, in itself, entitle the taxpayer to file a second complaint in the same interim period, we must reject Oakcrest's argument that its second complaint should have been permitted on the basis that the decreased occupancy rate at its property was not taken into account in the prior proceedings.

{¶ 21} Finally, Oakcrest relies on *Akron Centre,* 128 Ohio St.3d 145, in support of its argument that it should have been allowed to raise the occupancy issue in its second complaint. *Akron Centre* also presented the question of whether a second complaint satisfied the requirements of R.C. 5715.19(A)(2), but the facts are clearly distinguishable from the facts in this case. In *Akron Centre*, a major tenant had announced its intention to vacate the commercial property at the end of its lease, but the lease had not yet ended on the tax lien date applicable to the first complaint. A second complaint in the same interim period was filed after the tenant actually vacated the property. The question in that case was whether the BOR's consideration of the announcement of a principal tenant's planned departure (when the first complaint was filed) constituted consideration of the same factor as the tenant's actual departure and the ensuing vacany, which were the basis of the second complaint. *Id.* at ¶ 14. The supreme court concluded that these were not the same circumstance, and therefore the second complaint asked the BOR to consider a circumstance that the first complaint had not.

{¶ 22} Because the evidence in Oakcrest's case established that all of the changes in occupancy occurred prior to the filing of the first complaint, *Akron Centre* has no bearing on

the outcome of this case.

{¶ 23} The assignments of error are overruled.

III

{¶ 24} The Decision and Order of the BTA will be affirmed.

. . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Jeffrey A. Rich
Mark H. Gillis
Allison J. Crites
Laura G. Mariani
Charles F. Allbery, III
Ohio Board of Tax Appeals