[Cite as *Johnson v. Clark Cty. Bd. of Revision*, 2016-Ohio-7518.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| WILLIAM S. JOHNSON, et al. | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2016-CA-13 |
| | : | |
| v. | : | T.C. NO. 2015-1390 |
| | : | |
| CLARK COUNTY BOARD OF REVISION, et al. | : | (Board of Tax Appeals) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___28th___ day of _____October_____, 2016.

. . . . . . . . . .

WILLIAM S. JOHNSON, P. O. Box 62, Clifton, Ohio 45316
    Plaintiff-Appellant

WILLIAM D. HOFFMAN, Atty. Reg. No. 0047109, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45501
    Attorney for Defendant-Appellee, Clark County Board of Revision

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} William S. Johnson appeals from a judgment of the Board of Tax Appeals (BTA), which affirmed a decision of the Clark County Board of Revision regarding the taxable value of Johnson's farm.

**I.    Facts and Procedural History**

{¶ 2}  Johnson owns a commercial farm, which includes a residence, in Clark County, Ohio.  For several years, Johnson has been involved in various disputes with the county over the valuation of his property for tax purposes.   This appeal relates to the 2014 valuation.

{¶ 3} Because Johnson's property is a commercial farm, its value for tax purposes may be determined using its current agricultural use value (CAUV), rather than its "highest and best use" or fair market value.   The use of the CAUV normally results in a substantially lower tax bill.     The various values which are used to calculate the CAUV are determined by the Ohio Department of Taxation, based on the characteristics of the land.

{¶ 4}  On March 31, 2015, Johnson filed a Complaint against the Valuation of Real Property for the 2014 tax year; the classification of approximately 9.5 acres of Johnson's farm was in dispute.   The county auditor placed the taxable value of the Johnson farm, using the CAUV (which excludes the structures) at $325,510.   In Johnson's view, with the various changes in classification he sought, the taxable value using the CAUV should have been $227,501.   (The exact nature of the disputed property classifications will be discussed under the first assignment of error.)   A hearing before the Board of Revision was scheduled for July 23, 2015.

{¶ 5}  On July 15, 2015, Johnson sent a letter to John Federer, the county auditor and secretary of the Board of Revision, in which he requested that Chris Simpson and Shane Gray attend the hearing.   The letter identified Simpson as working at "Clark Co. Soil and Water Conservation" and Gray as being from "the Auditor's office."   At the hearing on July 23, 2015, Simpson and Gray were present, but they were not formally

called to testify; nonetheless, Johnson did ask them some questions. On August 7, 2015, the Board of Revision notified Johnson that it had decided not to adjust the value of his property in response to his complaint.

{¶ 6} Johnson filed a notice of appeal to the BTA, and a hearing was held on December 2, 2015. Johnson testified at the hearing, but no other witnesses were called. On February 8, 2016, the BTA concluded that Johnson's bases for a reduction in value were insufficient to support such an adjustment. It is from this order that Johnson now appeals.

{¶ 7} Generally, the parties' previous disputes about Johnson's property's valuation are not relevant to this appeal. However, both parties reference their dispute over the 2010 valuation of Johnson's property, which was appealed to the BTA and then to this court. *Johnson v. Clark Cty. Bd. of Revision*, 2d Dist. Clark No. 2013 CA 32, 2014-Ohio-329 ("*Johnson I*"). Moreover, the Board of Revision acted in response to our remand in *Johnson I* while this case was pending. As such, we will briefly discuss this matter.

{¶ 8} In *Johnson I*, we observed that the county's property record card upon which the BTA had relied did not expressly state the value of Johnson's property and that it was unclear how the county auditor and the Board of Revision had arrived at the CAUV for the property for 2010. Although we affirmed the BTA's decision in some respects, we remanded for the Board of Revision "to affirmatively demonstrate that its calculation of the CAUV is reliable and supported by the evidence, and if warranted adjust the value accordingly." *Id.* at ¶ 41, 49. It appears from the record that, in response to our remand, the Board of Revision adjusted the valuation of the property for tax years 2010 through

2014, and issued Johnson a partial refund. *See* June 25, 2015 letter and attachments from Auditor John S. Federer to Johnson. *See also* BTA Decision and Order of February 8, 2016, distinguishing the present appeal "for a variety of reasons, including more extensive information regarding the auditor's valuation" and Johnson's acknowledgement that Simpson had visited the property and discussed a number of issues with him, which are the basis of the current valuation.

{¶ 9} It appears that Johnson did not appeal from the Board of Revision's response to the remand and, if he had, that appeal would have been a separate case from this one. As such, Johnson may not raise any objections to the proceedings related to his 2010 complaint in this appeal. It also appears, however, that the auditor's adjustments to the 2014 valuation of the property did not resolve the issues raised in Johnson's complaint about the 2014 valuation, which are at issue in this appeal.

{¶ 10} Johnson appeals to this court, raising 12 assignments of error.

## II. Procedures and Standards of Review for Property Tax Disputes

{¶ 11} R.C. 5715.19(A)(1) sets forth the general procedure by which a person or entity "owning taxable real property" may file a complaint against the "determination of the total valuation or assessment of any parcel that appears on the tax list." R.C. 5715.19(A)(1)(d). Such complaints must be filed with the county auditor, who presents "all complaints" to the county Board of Revision. R.C. 5715.19(A)(1). *See also Huber Hts. City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 2d Dist. Montgomery No. 24686, 2012-Ohio-193, ¶ 6.

{¶ 12} A complainant shall provide the Board of Revision all information or evidence within the complainant's knowledge or possession that affects the real property

that is the subject of the complaint. R.C. 5715.19(G). "A complainant who fails to provide such information or evidence is precluded from introducing it on appeal to the board of tax appeals or the court of common pleas, except that the board of tax appeals or court may admit and consider the evidence *if the complainant shows good cause for the complainant's failure to provide the information or evidence to the board of revision.*" R.C. 5715.19(G). (Emphasis added.)

{¶ 13} When a party seeks an increase or decrease in valuation of property, that party bears the burden of proving that proposed value to the board of revision. *Schwartz v. Cuyahoga Cty. Bd. of Revision*, 143 Ohio St.3d 496, 2015-Ohio-3431, 39 N.E.3d 1223, ¶ 18, quoting *Snavely v. Erie Cty. Bd. of Revision,* 78 Ohio St.3d 500, 503, 678 N.E.2d 1373 (1997). Generally, the county's appraised value forms a "default valuation" that must be preferred and adopted if the appellant fails to prove a different value of the property. *Colonial Village Ltd. v. Washington County Bd. of Revision,* 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31. Stated differently, the county auditor's initial determination of value, "[a]lthough not rising to the level of a presumptively correct valuation, * * * possesses an increment of prima-facie probative force * * * in the absence of better evidence." *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 31. The property owner is free to rebut the auditor's value before both the board of revision, the court of common pleas and/or the board of tax appeals. *Id.* Although the appellant bears the burden in challenging the county's valuation of property, the determination of the value is a finding of fact and, as such, it must be supported by the evidence. *Dayton-Montgomery County Port Auth. v. Montgomery Cty. Bd. of Revision,* 113 Ohio St.3d 281, 2007-Ohio-1948, 865

N.E.2d 22, ¶ 24, citing *Columbus City Sch. Dist. Bd. of Educ. v. Franklin County Bd. of Revision,* 90 Ohio St.3d 564, 565, 740 N.E.2d 276 (2001).

{¶ 14}  The property owner may appeal a decision of a Board of Revision to the BTA or to the county court of common pleas. R.C. 5717.01, R.C. 5717.05.  A decision of the BTA may be appealed to the Supreme Court or to the court of appeals for the county in which the taxed property is located or in which the taxpayer resides.  R.C. 5717.04.

{¶ 15} When a case is appealed from a Board of Revision to the BTA, the burden remains on the appellant to demonstrate his or her right to an increase or a decrease from the value determined by the Board of Revision. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 27.  "To meet that burden, the appellant 'must present competent and probative evidence to make [his or her] case'; it is not enough to merely introduce evidence that calls the board of revision's valuation into question." *Schwartz* at ¶ 18, quoting *Columbus City Sch. Dist. Bd. of Educ. v. Franklin County Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001).  The party challenging the Board of Revision's decision at the BTA has the burden of proof to establish its proposed value as the value of the property.  *Columbus City Sch. Dist. Bd. of Educ. v. Franklin County Bd. of Revision,* 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001).  When the BTA is considering testimony and appraisal reports about the value of property, it "possesses wide discretion in evaluating the weight of the evidence and the credibility of the witnesses that come before it."  *Vandalia-Butler City School Dist. Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 106 Ohio St.3d 157, 2005-Ohio-4385, 833 N.E.2d 271, ¶ 5, quoting *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 85 Ohio St.3d 609, 613, 710 N.E.2d 681 (1999).

{¶ 16} The Ohio Supreme Court has consistently held that the value of property for tax purposes is a question of fact, the determination of which is primarily the province of the taxing authorities, and that a court should not disturb a decision of the Board of Tax Appeals with respect to valuation unless it affirmatively appears that the decision is unreasonable or unlawful. *Buck Storage, Inc. v. Clark Cty. Bd. of Revision*, 172 Ohio App.3d 250, 2007-Ohio-2964, 874 N.E.2d 829, ¶ 7 (2d Dist.), citing *Bd. of Revision of Cuyahoga Cty. v. Fodor,* 15 Ohio St.2d 52, 239 N.E.2d 25 (1968); *see also* R.C. 5717.04. We must affirm the BTA's determination if the record contains reliable and probative support for it. *Christian Voice of Cent. Ohio v. Testa*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-1527, ¶ 19; *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14. *See also Lakeside Ave. Ltd. Partnership. v. Cuyahoga Cty. Bd. of Revision,* 75 Ohio St.3d 540, 664 N.E.2d 913 (1998).

{¶ 17} We review the BTA's decision whether to admit additional evidence that was not introduced at the Board of Revision's hearing for an abuse of discretion. *Gatson v. Medina Cty. Bd. of Revision,* 133 Ohio St.3d 18, 2012-Ohio-3872, 975 N.E.2d 941, ¶ 24. An abuse of discretion indicates that the decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### III. Evidence Presented at the Board of Revision Hearing

{¶ 18} An audio recording of the Board of Revision hearing is part of the record; the hearing was not transcribed,[1] and the identities of some of the participants are

---

[1] The BTA notes in its decision that the Board of Revision hearing was recorded in audio format, and that, pursuant to R.C. 5715.08, the Board of Revision was not required to transcribe the hearing and was only required to "take full minutes" of all evidence

unclear. At the outset, Johnson was informed that the hearing would be 15 minutes long, but the Board actually spent more than 38 minutes discussing Johnson's testimony and evidence.

{¶ 19} Johnson was the only witness who provided sworn testimony at the hearing. Johnson sought to introduce the testimony of Chris Simpson, to whom he referred as the "auditor's expert"; one of the Board members responded that the purpose of the hearing was to hear Johnson's "facts," after he (Johnson) had an opportunity to consult with county employees, and not to hear "the county's evidence." Simpson was never sworn as a witness. Johnson did not expressly attempt to call Gray as a witness. However, it is apparent from the audio recording that both Simpson and Gray were present at the hearing, and Johnson occasionally sought corroboration from them of statements or assertions he was making.

{¶ 20} Simpson's and Gray's responses were sometimes unclear on the audio recording. But it is apparent from the recording that Simpson and Gray were not in full agreement with Johnson's characterizations of some of their findings, the amounts of acreage at issue, the current classifications of certain portions of Johnson's farm, or Johnson's conclusions of what could be inferred from maps Johnson presented as exhibits. For example, when Johnson asserted that Goose Creek should be classified as waste, Gray stated that part of it was already classified as waste. The men can also be heard discussing red and blue portions of the maps, but it is unclear from the recording which parts of the maps they are referencing during this discussion; the exhibits contained

---

presented. If any record of the proceedings other than the audio recording was made, it had not been made part of the record of the BTA or in this appeal.

in the record are black and white — no red or blue is discernable.

{¶ 21} At the Board of Revision hearing, Johnson asserted that the value of his land should be reduced for the following reasons: 1) an all-weather road classified as "pasture" should be properly classified as "Soil Capability Group 8," or "waste"; 2) a county drainage ditch running through his property (namely, Goose Creek) and a 25-foot easement from its banks should be classified as "waste"; 3) certain additional land currently characterized as woodland or pasture should properly be characterized as "waste"; and 4) some of his land should be classified as undrained soil, rather than drained soil, because its tile drainage system was no longer functioning.

{¶ 22} At the Board of Revision hearing, when Johnson sought corroboration from Gray regarding the status and acreage of the Goose Creek "easement," a female participant commented, and Johnson agreed, that the Goose Creek matter was being addressed in a "completely separate case" with the Engineer's Department. Gray stated that he could not verify the acreage at issue with respect to the Goose Creek easement based on the maps and/or documents Johnson presented. It is unclear from the audio recording whether Gray agreed with Johnson's assertion about how this part of the property should be characterized, but Gray asserted that some of the Goose Creek land had been reclassified as "waste" in separate proceedings. Johnson also asserted that Simpson had "reviewed the drainage" of certain portions of the farm and had found that the drainage system was "no longer effectively functioning"; however, it was unclear from the record whether Simpson agreed with this statement or Johnson's assertion that the land should be reclassified based on its drainage capabilities. Gray did seem to agree with Johnson's assertion that the center-line of Goose Creek was "offset" or misplaced

on the "soil maps" by approximately 50 feet, thereby "expanding the Linwood muck soil," but the effect of this deviation on the property value, if any, was not explained.

{¶ 23}   Johnson was asked whether he had had the land surveyed by a certified surveyor.   He responded that he had not, but that he had found the survey stakes himself and had walked the land with Simpson with a metal tape to take measurements. Johnson also stated that his employees used GPS devices when they worked the land, and that these devices corroborated his measurements.   A Board member pointed out, however, that none of those employees was present at the hearing.

{¶ 24}   Johnson presented a USDA aerial map as an exhibit, which classified sections of his land based on whether they were "highly" or "not highly" erodible, along with numeric notations.   No explanation was provided as to what parts of the map reflected Johnson's property or how the erodibility of the land correlated to the classifications discussed at the hearing (e.g., pasture, cropland, woodland, waste). Someone at the hearing commented that no one was present from the USDA to "represent those numbers."   There are also handwritten notations on the map, for which no explanation was given.

{¶ 25}   Johnson also presented a chart from the Farm Service Agency (FSA), entitled "Report of Commodities Farm and Tract Detail Listing."   According to Johnson, the "Cropland" listed on this report for Johnson's farm reflected slightly less acreage than the auditor's number.[2]   The report stated that it is to "be used to determine eligibility for

---

[2] The exact manner of Johnson's calculation is unclear, as the documents on which he relies do not contain calculations of the acreage.   See, e.g., Ex. 2, 4, and 5.   However, the FSA report for Johnson's farm lists "cropland" at 108.48 acres, and the sum of "tillable" land and "pasture" land on the county's Property Record Card for Johnson's farm is 110.42 acres.   Thus, there is some support for Johnson's claim of a small discrepancy

assistance" and that the data contained therein is "voluntarily" reported. No detailed evidence was presented regarding the accuracy or reliability of this information or how this document would affect and/or correlate to a determination of taxable value, if at all.

**{¶ 26}** Johnson's written "Justification for Requested Change in CAUV of Farm Land," which was submitted to the Board of Revision, contains several assertions as to the opinions or actions of Simpson, but these assertions were not verified at the hearing before the Board of Revision. The written document also contains other assertions about which no evidence was presented, such as the amount Johnson's neighbors had spent installing sub-surface tiles for drainage on their property.

### IV.    Expert Testimony

**{¶ 27}** In his first assignment of error, Johnson argues that the Board of Revision erred in failing to allow him to present expert testimony at its hearing, and that the BTA should have remanded the case to the Board of Revision so that he could present such expert testimony. Johnson claims that expert testimony from Simpson and Gray was critical to his claims that the county's cropland values and acreages were incorrect and that "the BTA did not have sufficient evidence or expertise to undertake an independent valuation of the farm CAUV" without this evidence. In his sixth assignment, Johnson argues that he had "no reasonable expectation" that he would be allowed to present expert testimony before the BTA.

**{¶ 28}** We described the proceedings before the Board of Revision above. Although it is debatable whether the Board of Revision affirmatively prevented Johnson

---

(less than 2 acres). However, the reliability and intended use of some of the documents was not established.

from presenting expert testimony from Simpson and Gray, the Board did, at the very least, discourage Johnson from spending time presenting testimony from these witnesses. One member stated that the purpose of the hearing was to hear Johnson's testimony, not the county's evidence. It is understandable that Johnson might have interpreted this exchange as a refusal to hear the testimony of his experts.

{¶ 29} However, if the Board of Revision erred in failing to consider the testimony of Johnson's experts, his remedy was to seek to present such evidence to the BTA. A complainant who fails to provide relevant evidence to the Board of Revision is precluded from introducing it on appeal to the board of tax appeals (or the court of common pleas), *except that* the BTA "may admit and consider the evidence *if the complainant shows good cause for the complainant's failure to provide the information or evidence to the board of revision.*" (Emphasis added.) R.C. 5715.19(G).

{¶ 30} At the BTA hearing, Johnson asserted that the Board of Revision had "refused to allow" Simpson to testify, but that Simpson had "affirmed" each assertion that Johnson made during the hearing as to Simpson's findings. Johnson stated that he did not understand what legal authority allowed the Board of Revision to prevent him from presenting his experts, and he encouraged the BTA to sanction the Board of Revision for doing so. However, Johnson also stated that the Board of Revision record showed he "went through each one of the findings that [he] documented and the justification and [he] personally asked Mr. Simpson if that was his finding and he [Simpson] responded 'yes'."

{¶ 31} At the BTA, Johnson's argument focused on his inability to call Simpson; there was no discussion of Gray's failure to testify before the Board of Revision or of having him appear at the BTA. When Johnson was asked whether Simpson was

available for the BTA hearing, Johnson stated, "I didn't want to take his time up because, you know, you're not allowing a lot of testimony." The BTA examiner stated that he (the examiner) was allowing as much time as Johnson needed, but Johnson reiterated that he (Johnson) did not "want to waste his (Simpson's) time to drive all the way over here."

{¶ 32} We recognize that Johnson may not be familiar with the formalities of calling a witness and that the Board of Revision might not conduct its hearings with the formalities of a courtroom. We also recognize that the Board of Revision encouraged Johnson to use his time for his own testimony or evidence, because the Board was already familiar with the conclusions of the county employees. However, even if we were to conclude that Johnson was erroneously "prevented" from calling witnesses at the Board of Revision hearing, his recourse was to call those witnesses at the BTA hearing.

{¶ 33} At the BTA hearing, Johnson attempted to argue the somewhat contradictory positions that 1) the BTA should rely on Johnson's questioning of an unsworn Simpson at the Board of Revision hearing and 2) that the Board of Revision should be sanctioned for not allowing Simpson's testimony. In other words, Johnson sought to rely on Simpson's views, as allegedly expressed at the hearing, and to obtain relief for being prevented from presenting those views. To the extent Johnson was prevented from presenting expert testimony at the Board of Revision, he had the opportunity to correct any omission by the presentation of evidence at the BTA. He failed to do so, citing only the inconvenience to Simpson. In our view, Johnson waived any error in the presentation of evidence to the Board of Revision by failing to offer that evidence before the BTA when he was given an opportunity to do so.

{¶ 34} In his sixth assignment of error, Johnson asserts that, based on his past

experiences with the BTA, "they want to speed things along and are not going to allow long, complex, and detailed testimony from an expert," and "he had no reason to believe that he would be granted leave to present new testimony at the BTA." Johnson "was sure that the BTA would remand the case to the Board of Revision to hear expert testimony," because of the Board of Revision's "blatant and unlawful abuse of power" in the first instance. He also claims that he "called the BTA" prior to the hearing and was told that the BTA hearing was "expected to last only 10 to 15 minutes."

{¶ 35} R.C. 5715.19(G) clearly states that the BTA may admit and consider additional evidence "if the complainant shows good cause for the complainant's failure to provide the information or evidence to the board of revision." Moreover, upon finding an error or oversight in the Board of Revision's valuation, the BTA is authorized to determine the taxable value of the property itself. R.C. 5717.03(B).

{¶ 36} Johnson's "past experiences" with the BTA are not of record in this case and, in any event, are not determinative of how the BTA must proceed. The BTA was authorized to take additional evidence upon a showing of good cause (R.C. 5715.19(G)), and it appears from the transcript of the BTA hearing that it was, in fact, willing to hear additional evidence, if Johnson had been prepared to present it. We cannot find that the BTA abused its discretion in failing to hear evidence that Johnson was unprepared to present and, in any event, Johnson has not assigned as error that the BTA did not take additional evidence. Johnson acted at his own risk when he assumed that no such evidence would be allowed at the BTA hearing or that it was too much trouble to ask Simpson to attend the BTA hearing.

{¶ 37} Even assuming that Johnson was, in fact, told that the BTA hearing would

last only 10-15 minutes, as he claims, Johnson's belief that the BTA would remand to the Board of Revision was not well-founded, nor was such a remand required. Although we recognize that the rules governing these proceedings are somewhat complex, we cannot conclude that Johnson is entitled to relief from the BTA's decision based on his erroneous assumptions about how the BTA proceedings would unfold.

{¶ 38} The first and sixth assignments of error are overruled.

{¶ 39} Johnson's remaining arguments fall generally into three categories. Procedurally, Johnson argues that 1) the Board of Revision and BTA did not adequately address the auditor's 2010 CAUV values, which were the subject of a prior appeal and remand by this court (Second Assignment of Error), and 2) the Board of Revision and BTA violated his due process rights by imposing unreasonable time limits on his presentation of evidence (Eleventh Assignment of Error). Substantively, Johnson contends that the decisions of the Board of Revision and BTA with respect to the value of his property were unsupported by the evidence (Assignments of Error 3, 4, 5, 7, 8, 9, 10 and 12).

## V.   Relevance of the 2010 Taxable Value of the Farm

{¶ 40} Johnson argues that the BTA failed to adequately address the 2010 valuation of his farm, which had been the subject of a previous appeal. Johnson argues that the Board of Revision has not yet complied with our remand in *Johnson I*. Johnson acknowledges that the Board of Revision held a meeting on this issue, but he asserts that it was not a "hearing" and that he was not allowed to present testimony.

{¶ 41} As discussed above, in *Johnson I*, we affirmed in part the BTA's decision with respect to the 2010 valuation, but we remanded for the Board of Revision "to

affirmatively demonstrate that its calculation of the [2010] CAUV is reliable and supported by the evidence, and if warranted adjust the value accordingly." *Id.* at ¶ 41, 49. Our remand did not require the Board of Revision to hold a hearing or take additional evidence, although it would have been permitted to do so.

**{¶ 42}** As best we can determine from the record before us, it appears that the Board of Revision complied with our instructions to review and, if necessary, to update its valuations; it adjusted (lowered) the valuation of the Johnson farm for tax years 2010 through 2014, and issued Johnson a partial refund. *See* June 25, 2015 letter and attachments from Auditor John S. Federer to Johnson; BTA Decision and Order of February 8, 2016. In fact, Johnson acknowledges in his brief that, in 2014, after the matter was remanded to the Board of Revision in *Johnson I,* the auditor "issue[d] a letter changing 71% of the soil land use acreages (17 out of 24 list[ed] in the Farmland Calculator or Agricultural Data sheet)."

**{¶ 43}** The letter sent to Johnson by the Board of Revision after these adjustments were made seems to indicate that the adjustments were made effective beginning with the 2013 tax year (rather than 2010), and Johnson emphasizes in his brief that the Board of Revision "refuses to adjust the CAUV values for the tax years 2010, 2011, and 2012"; he also asserts that the Board's failure to adjust the 2010, 2011, and 2012 values was "in direct violation" of our instruction in *Johnson I.* However, it appears that Johnson took no action in response to the Board of Revision's letter setting forth its revised valuations and how they would be applied. Johnson did not appeal from the Board of Revision's decision in response to our remand.

**{¶ 44}** Even assuming that Johnson is correct, i.e., that the Board of Revision's

actions did not fully comply with our remand, and although the same property is at issue, this appeal relates only to the Board of Revision's and BTA's actions in response to Johnson's complaint about the 2014 valuation. He may not raise objections to other decisions related to the property at issue in this appeal, especially in light of his acknowledgement that the 2014 value at issue in this case was reviewed and modified in response to the prior proceedings.

{¶ 45} The second assignment of error is overruled.

### VI. Time Limitations on Presentation of Evidence

{¶ 46} Johnson asserts that his due process rights were violated by the time limitations on the presentation of evidence at both hearings.

{¶ 47} At the outset of the Board of Revision hearing, a 15-minute time limit was mentioned, but the hearing actually extended to more than 38 minutes. Although Johnson's "witnesses" were not formally called or sworn, as discussed above, he did solicit responses from them, and it does not appear that Johnson was prevented from addressing any issue that he sought to address.

{¶ 48} With respect to the BTA hearing, Johnson states in his brief that he was told by phone prior to the hearing that the hearing was expected to last only 10-15 minutes. No such restriction was stated on the record, but Johnson was encouraged to be "succinct" and to focus on "new evidence" that was not discussed before the Board of Revision. Several times, Johnson stated that everything he wanted to cover was discussed in his brief to the BTA. When the discussion turned to the Board of Revision's alleged refusal to allow Johnson to call witnesses, the BTA's Attorney-Examiner asked if the witnesses were available "for today's hearing" and stated that she was allowing

Johnson "as much time as [he] need[ed]."  Johnson responded that he had not wanted to "waste" Simpson's time by having him "drive all the way over" to the BTA hearing (in Columbus).  Johnson eventually stated that he had nothing else to present.

{¶ 49}  There were undoubtedly time constraints at both of the hearings, but, aside from the witness issues discussed above, it does not appear that Johnson was prevented from addressing any issue that he sought to address.  His arguments with respect to the classification of various sections of his land are well-developed in the record.  Neither the Board of Revision nor the BTA agreed with Johnson's views, but the record does not support Johnson's argument that he was prevented from fully presenting his positions or that additional time would have led to a different result.  In other words, it is not apparent that Johnson suffered any prejudice from the limitations on the lengths of the hearings or that, at either hearing, he was prevented from presenting the substance of his complaint. Accordingly, we reject his argument that his due process rights were violated.

{¶ 50}  The eleventh assignment of error is overruled.

### VII.    Was the Valuation Unreasonable or Unlawful?

{¶ 51}  Johnson's remaining assignments of error assert that, in various ways, the CAUV classifications of portions of his land were incorrect, resulting in an overstated 2014 taxable value of the farm as a whole.  His arguments include that 1) a gravel road, a fence line, and certain wind breaks and planted shelter belts on his farm should have been classified as waste, rather than cropland or woodland; 2) that certain soil types on his property should have been assigned a less valuable classification because of their poor drainage; 3) that some of the boundaries of the property are recorded incorrectly, such that unusable land (a fence line) is improperly reflected as being on a neighbor's

property, when in fact it is on Johnson's property; and 4) that the total amount of "woodland" on his property was less than 5 acres, which is too small an amount to qualify as woodland, and thus should have been classified as waste.

{¶ 52} We discussed the evidence presented at the Board of Revision hearing, above. At this hearing and before the BTA, Johnson repeatedly attempted to present alleged findings by Simpson with respect to Johnson's farm. For example, at the BTA hearing, Johnson stated:

Mr. Simpson came out to the farm. We went over all the different aspects that were at issue and he – he had a set of findings. Those findings are contained in a three-page justification for request of changes in CAUV farmland that was part of the original Complaint to the Board of Revision.

* * *

The Auditor's Office basically ignored most all of their own expert's findings [referring to Simpson] and made only minimal changes to the CAUV value of the property * * *.

{¶ 53} There are several problems with this type of evidence. First, it is hearsay: Johnson repeatedly attempted to recount to the Board of Revision and to the BTA findings allegedly made by Simpson. Although the rules of evidence, including the hearsay rule, Evid.R. 802, do not control administrative hearings, and hearsay evidence may be allowed, an agency may consult the rules for guidance. *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 13, citing Evid.R. 101(A) and *Plain Local Schools v. Franklin Cty. Bd. of Revision,* 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20. The Board of Revision and the BTA were permitted to consider

Johnson's representations of Simpson's findings, but neither was required to credit those representations. Of course, this is a somewhat circular argument, insofar as Johnson argues that he was prevented from calling Simpson. Thus, we will analyze the use of this evidence more closely with respect to each hearing.

{¶ 54} At the Board of Revision hearing, Johnson made several representations with respect to the findings of both Simpson and Gray, and the two men were both present. As discussed above, it is apparent from the audio recording of the hearing that Simpson and Gray were not in full agreement with Johnson's characterizations of some of their findings, the amount of acreage at issue with respect to his various arguments, the current classifications of certain portions of the farm, or Johnson's assertions of what could be inferred from maps Johnson presented as exhibits. Considering that Johnson was permitted to seek responses from these men at the Board of Revision hearing (although not as sworn witnesses), and that those responses indicated some disagreement with Johnson's characterizations of their findings, both the Board of Revision and the BTA could have reasonably questioned, or even rejected, Johnson's representations of the views of Simpson and Gray.

{¶ 55} Moreover, as also discussed above, to the extent that Johnson was prevented from eliciting testimony from Simpson and Gray at the Board of Revision hearing, his recourse was to call these witnesses at the BTA hearing, which he failed to do. The BTA was not required to accept Johnson's recitation of Simpson's findings (which were contained in Johnson's "Justification for Requested Change in CAUV of Farm Land" and in his statements at the hearing) simply because Johnson did not want to inconvenience Simpson to make the trip. Moreover, after reviewing the recording of the

Board of Revision hearing, the BTA would also have been aware that Simpson and Gray were not in full agreement with Johnson's characterizations. In sum, when Johnson did not avail himself of the opportunity to call Simpson and Gray as witnesses before the BTA, and considering the other evidence that was in the record with respect to these findings, the BTA was not required to credit or to give any weight to Johnson's representations about Simpson's and Gray's conclusions or opinions.

{¶ 56} Johnson also repeatedly asserts that he was competent to testify as to the value of his land. This is a well-established principle of law. *See, e.g., Valigore v. Cuyahoga Cty. Bd. of Revision*, 105 Ohio St.3d 302, 2005-Ohio-1733, 825 N.E.2d 604, ¶ 5, quoting *Smith v. Padgett*, 32 Ohio St.3d 344, 347-348, 513 N.E.2d 737 (1987) ("the owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property"); *Sec. Natl. Bank & Trust Co. v. Reynolds*, 2d Dist. Greene No. 2007 CA 66, 2008-Ohio-4145, ¶ 17 (although testimony regarding opinion of value is generally confined to expert witnesses, an owner of property "is presumed to have special knowledge of the value of his property because of his familiarity with the property").

{¶ 57} However, as we observed in *Johnson I*, "[w]hile an owner may testify as to the value of his or her property, there is no requirement that the finder of fact accept that value as the true value of the property." *Johnson I* at ¶ 46, quoting *WJJK Investments, Inc. v. Licking Cty. Bd. of Revision,* 76 Ohio St.3d 29, 32, 665 N.E.2d 1111 (1996); *Valigore* at ¶ 5. Further, the market value of the property, of which an owner is generally presumed to have knowledge, is not what was at issue in this case; the value of agricultural property for tax purposes is not based on market value, and the value of any

property for tax purposes is "primarily the province of the taxing authorities." *Fodor,* 15 Ohio St.2d 52, 53, 239 N.E.2d 25 (1968). Although we do not question that Johnson is very familiar with the layout of his farm and its characteristics, the Board of Revision and BTA were not required to accept his testimony as to the various qualities and classifications of the property which factor into the CAUV categorization.

{¶ 58} Johnson had farmed the land in question for many years; as such, he asserted that his opinions about the boundaries, suitability of the land for growing crops, and ease with which certain unfarmed portions of the land could be converted to cropland were "superior" to those of the auditor and were entitled to more weight than any characteristics that could be gleaned from an aerial survey map. However, in the absence of a certified appraisal of the property, and considering Johnson's financial interest in asserting a lower value, the Board of Revision and BTA were not required to accept Johnson's opinions without independent corroboration of his claims. (We discussed his attempt to get corroboration from county employees, which met with limited success, above.) Because the record does not clearly demonstrate what the findings of the county employees were, the record does not support Johnson's assertion that the county ignored these findings or failed to incorporate them into its valuation.

{¶ 59} Similarly, Johnson argued that a gravel road, fence rows, and certain wooded portions of his property should be characterized as waste, either because they could not be readily converted to cropland or because they did not meet the minimum acreage requirement for woodland. He also argued that certain sections drained poorly and therefore should be assigned a lower value. But Johnson did not present any independent evidence about the work that would be involved in converting the gravel road

or fence rows to cropland, and the Board of Revision and BTA were not required to credit his own assessment of the difficulty of this task. Moreover, without a survey, they were not compelled to credit Johnson's opinions about the drainage of certain portions of the land or that the amount of woodland present on the farm was insufficient for the "woodland" classification to apply. The BTA specifically noted Johnson's failure to substantiate his allegations by "obtaining the services of a licensed surveyor or unbiased third party expert to thoroughly measure and evaluate the acreage assigned to each soil usage." Although Johnson attempted to rely on USDA and Farm Service maps, these maps were obviously prepared for other purposes and did not clearly support his assertions.

{¶ 60} Finally, Johnson repeatedly asserted in his brief and at oral argument that 1) the county had not presented reliable evidence that it had properly calculated the land's value, and 2) there was no presumption that the Board of Revision's valuation was valid. We discussed the burden of proof and the need for some evidence supporting the county's valuation above. We reiterate, however, that the burden was on Johnson both at the Board of Revision and at the BTA to show that the value was *not* properly calculated. The "Land Information" on the county property card and the June 25, 2015 letter (and attachments) to Johnson from the county auditor detail the bases for the county's valuation. Johnson had the initial burden to show that the county's valuation was unreasonable or unlawful. The county did not have the burden in the first instance, as Johnson suggests, to establish the accuracy of any appraisals or assessments on which it relied in calculating the taxable value of the property. Moreover, Johnson's assertion that a landowner's and the county's proposed valuations are entitled as a matter

of law to equal weight is incorrect.   The BTA reasonably concluded that Johnson had not established that the county's valuation was unreasonable or unlawful.

{¶ 61}   The third, fourth, fifth, seventh, eighth, ninth, tenth and twelfth assignments of error are overruled.

{¶ 62}   The judgment of the BTA will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and WELBAUM, J., concur.

Copies mailed to:

William S. Johnson
William D. Hoffman
Joseph W. Testa
Ohio Board of Tax Appeals